### GILBERT and another *against* CHAPIN.

The testator, by his will, disposed of his estate thus : " After the payment of my just debts, I give, devise and bequeath all my estate, real and personal, to my wife *A*, to her and to her heirs forever; recommending to her to give the same to my children, at such time and in such manner, as she shall think best.    The testator, at his decease, left two children.    *A*, his widow, was afterwards married to *B ;* had issue by him ; made her will, and thereby gave all her estate, (after payment of certain claims,) to the children of her first husband ; and then died, *B* surviving her.  In an action of ejectment, brought by those children, to recover the estate so devised, against *B*, who was in possession, claiming as tenant by the curtesy, it was held, that *A*, under the will of her first husband, took an absolute estate in fee-simple, and not merely an estate *in trust* for his children ; and consequently, that *B* had a life estate in the premises, as tenant by the curtesy.   [Two judges dissenting.]

THIS was an action of ejectment, brought by *Lucy Jane Gilbert* and *Cordelia Gilbert* against *Albert Chapin.*

The plaintiffs are the only children of *William Gilbert*, deceased.    He died on the 13th of *January*, 1844, leaving a will, dated *January* 8th, 1844, executed in all respects according to law ; by which he disposed of all his estate, in the following words : " After the payment of my just debts, I give, devise and bequeath, all my estate, real and personal, to my wife, *Abby H. Gilbert*, to her and her heirs forever ; recommending it to her to give the same to my children, at such

time and in such manner, as she shall think best." On the 22nd of *November,* 1844, *Abby G. Gilbert* was married to *Albert Chapin,* the defendant, and on the 2nd of *July,* 1847, she died, leaving, besides the plaintiffs, two other children, issue of her second marriage ; her husband, the defendant in the present action, surviving her.    Previous to her death, *viz.* on the 17th of *June,* 1847, she made her last will and testament, by which, after having made provision for the payment of a promissory note to *Oliver H. King,* for 98 dollars, 73 cents, signed jointly by herself and the defendant, and authorizing her executor to sell any portion of her estate for the payment of such note, she disposed of all her estate, real and personal, in the following words : " I give, devise and bequeath to my two daughters, *Lucy Jane Gilbert* and *Cordelia Gilbert,* all my estate, both real and personal, which shall remain after the payment of the above note, with the necessary expenses, to be equally divided between them."

The defendant, since his wife's decease, has been, and still is, in possession of the demanded premises ; the surrendry of which was demanded, by the plaintiffs, prior to the commencement of this suit ; the same premises being a part of the estate of said *Gilbert,* which he owned and possessed at the execution of his will, and at his decease, and which came into the possession of his widow, the mother of the plaintiffs, by virtue of that will, and were, by her, devised to the plaintiffs.

The case was reserved for the consideration and advice of this court, as to what judgment ought to be rendered.

The case was argued before this court, at the regular term in *Tolland* county, *August,* 1848, by *T. C. Perkins* and *Brockway,* for the plaintiffs, and by *Waldo,* for the defendant ; but the judges, in consultation, not being unanimous in their views, recommended a second argument, which was had at *Hartford,* in *November* following.

For the defendant, (*a*) it was contended, That *Abby H. Gilbert,* under the will of her first husband, took an estate in fee-simple in the demanded premises ; and consequently, that

(*a*) As there was no question as to the title of the plaintiffs, aside from the defendant's claim of curtesy, his counsel went forward in the argument.

*Tolland,*
August, 1848.

Gilbert
*v.*
Chapin.

the defendant, her second husband, having had issue by her, has a life estate therein, as tenant by the curtesy. In support of this position the following considerations were urged. In the first place, it will not be denied, that the will of *W. Gilbert* gave his wife an estate in fee-simple, aside from the subsequent words of recommendation. The estate is devised *to her and her heirs forever*; words technically apt and abundantly sufficient for this purpose. Secondly, the testator, having given such an estate to his wife, did not *intend*, by the subsequent words, to take back what he had thus given. He *intended* throughout, that she should take just such an estate as he at first gave her. He meant that the estate should be *hers*, and that *she* should have the disposal of it. Thirdly, the words of recommendation did not create *a trust*. What was the testator's purpose in their insertion? Obviously, to aid the devisee in the exercise of her *discretion* as to the disposal of the property, when she had done with it, but not to annul her discretion, or to controul it. The *time* and *manner* of the disposal, are left to her discretion, by the very words relied upon to create the trust. She had a *choice* to act, or not to act; to act at one time, or another; in one manner, or another. Fourthly, according to the latest and best authorities, words of recommendation in a will, will not be construed as importing a *direction*, unless it is clear from the whole will, that they are designed to be so used. 1 *Jarman on Wills*, 338. n. 2 *Sto. Eq.* § 1069. 1070. *Sale* v. *Moore*, 1 *Sim.* 534. decided *July* 23, 1827. *Meredith* v. *Heneage*, 1 *Sim.* 542. in 1824. *Bensom* v. *Whitlam*, 5 *Sim.* 22. in *December*, 1831. *Hoy* v. *Master*, 6 *Sim.* 568. in *March*, 1834. *Lawless* v. *Shaw*, 1 *Lloyd & Goold*, 154. in 1835. In this case, it is apparent from the whole will, that the testator meant to *advise* his wife what to do with the property he was giving to her, rather than to *direct* her.

The counsel for the plaintiffs insisted, 1. That it was a well established rule of law, that words of recommendation in a will, addressed to a devisee or legatee, constitute him a *trustee* for the person or persons in whose favour the recommendatory words are used; there being, as in this case, no doubt as to the subject matter or the objects of the trust. *Lewin on Trusts*, 77 to 81. (14 *Law Lib.* 9. 23. 40.) 2 *Sto. Eq.* § 1068. *Massey* v. *Sherman, Amb.* 520. *Malim* v.

*Keighley*, 2 *Ves.* jun. 333 529. *Paul* v. *Compton*, 8 *Ves.* jun. 380. *Cruwys* v. *Colman*, 9 *Ves.* jun. 319. 323. *The Attorney-General* v. *Davies*, *Id.* 546. *Cary* v. *Cary*, 2 *Scho. & Lef.* 173. 189. *Hart* v. *Hart's* exrs., 2 *Desaus.* 57. 63. *Vandyck* v. *Van Buren*, 2 *Caines R.* 84. and editorial note, *p.* 85. *Bull* v. *Bull*, 8 *Conn. R.* 48. *Strong* v. *Strong*, *Id.* 413. 2 *Sw. Dig.* 107.

2. That the manifest intention of the testator, in the present case, is in conformity to this rule. He certainly intended that his wife should hold the property *for his children*. He meant to give it to them, through her : in other words, that she should hold it *in trust* for them, leaving the time and manner of making it over to them in form, at her discretion. So she understood the will, and acted accordingly.

3. That this rule, having become a rule of property, can be changed only by the legislature.

4. That the cases cited by the defendant's counsel, as impugning the rule, or establishing a different one, are mostly cases where the object and intention of the testator were either doubtful, or inconsistent with the creation of a trust. [Here the cases referred to were examined and commented on.] Besides, the conflict, in those cases, was generally between the devisee and the *cestui que trust.* Here there is no such conflict. The devisee has given her construction, by her acts, in favour of the plaintiffs' claim, and is now at rest. If the defendant has any claim, it is certainly one not intended by the testator.

CHURCH, Ch. J. The plaintiffs are the children of *William Gilbert*, deceased, and claim the land in dispute, if not as his devisees, then by virtue of the last will and testament of their mother, *Abby H. Chapin.*

*William Gilbert* was seised of the premises, and died *January* 13th, 1844, having duly executed his will, on the 8th day of the same month, leaving these plaintiffs and their mother, then *Abby H. Gilbert*, surviving him. By his will, he thus disposed of his estate, to wit : " After the payment of my just debts, I give, devise and bequeath all my estate, real and personal, to my wife, *Abby H. Gilbert*, to her and her heirs forever ; recommending to her to give the same to my

*Tolland,*
*August, 1848.*

Gilbert
*v.*
Chapin.

children, at *such time and in such manner as she shall think best.*"

On the 22d day of *November*, 1844, the said *Abby* intermarried with *Albert Chapin*, the present defendant, and died on the 2d day of *July*, 1847, leaving two children, the issue of her second marriage. By her last will and testament, duly executed, and dated *June* 17th, 1847, she made provision for the payment of a note, which was signed jointly by herself and her husband, and authorized her executor to sell any portion of her estate for its payment; and then to her children by her first husband, the plaintiffs, she gave all her estate, both real and personal, which should remain after the payment of the note aforesaid and necessary expenses, to be equally divided between them.

The defendant, at the decease of his wife, was in possession of the land in question, the same of which the said *William Gilbert* died seised, and still claims the same as a tenant by the curtesy, by virtue of his marriage with the mother of the plaintiffs, and having children by her. The respective rights of these parties depend upon the legal construction of the will of *William Gilbert*. Did his wife take an absolute beneficial interest—a fee simple—under that will? If she did, as the defendant here claims, her second husband, who is the defendant, is a tenant by the curtesy, and has a life estate in the demanded premises. But if she was merely appointed trustee for the plaintiffs, or in addition to this, took a life estate for her own benefit, then no claim of her surviving husband can be interposed to prevent a recovery by the plaintiffs.

1. By a long course of decisions in the *English* courts of equity, language of recommendation, or expressive of desire, hope, confidence, &c. used by testators, or, as it has been sometimes called, *precatory* language, has been construed to create a trust in the immediate devisee or legatee for the benefit of others, as being the real objects of the testator's bounty. And perhaps in *England*, such a construction, with modern qualifications, may have become so far a recognized rule of property, as that it cannot now safely be abandoned. But in the few *American* cases which we have seen, in which

this principle has been referred to, we find nothing which we can regard as authority.

*Tolland*,
August, 1848.

Gilbert
*v.*
Chapin.

The case which we are now discussing, does not require of us a repudiation of the doctrine of recommendatory trusts; nor do we say, that we would not support them, in cases wherein the language of commendation or desire very clearly imported a fixed and imperative purpose. But we are sure, that in a majority of the cases, in which courts have discovered trusts, as they have believed, in language merely precatory, the real intention of testators has been subverted. And such, at length, is the opinion of the most eminent *English* judges. However this may be, we think, that submitting the peculiar phraseology of this will to the test of the best considered *English* authorities, and no trust in *Abby H. Gilbert* will be recognized. And even the rule stated by the master of the rolls, in the case of *Malim* v. *Keighley*, 2 *Ves.* jr. **333.** would not govern this case; although that may be classed among the earlier cases, and the rule there laid down has not been approved or followed in later ones. It is this : "Whenever a person gives property in the language of recommendation, and points out the object, the property and *the way it shall go*, that does create a trust." Here, although the objects and the property are well enough defined, yet the way in which the property shall go—how much each child shall take, is not pointed out, but left entirely to the discretion of the testator's wife.

By the early adjudications, a trust was raised, where not only the property devised, but the persons who were to take, by the commendatory terms of the will, were left quite doubtful; thereby in effect leaving it to the devisee in trust, or to the court in enforcing the trust, to dispose of the estate, instead of giving effect to the testator's will, made and executed by himself, as the statute of wills required. And thus, if lands were, by words of recommendation, &c. designed for the relatives of the testator, without more particular designation, it was said, that his heir at law alone would take ; and if personal estate, that it should go to such relatives as could legally make claim under the statute of distributions. *Wright* v. *Atkyns*, 19 *Ves.* jr. 299. *Leigh* v. *Leigh*, 15 *Ves.* jr. 92. *Pyot* v. *Pyot*, 1 *Ves.* 335.

The latter cases seem to require greater certainty ; and it

has been several times holden, within a few years, that no trust will be raised, by expressions in a will importing recommendation, hope, confidence, desire, &c. unless there be certainty as to the parties who are to take, and what they are to take ; nor if a discretion whether to act or not, be left with the devisee, or so called trustee. *Curtiss* v. *Rippon*, 1 *Madd. R.* 434. *Abraham* v. *Almon*, 1 *Russ.* 509. *Meredith* & al. v. *Heneage* & al. 1 *Simons,* 512. *Sale* v. *Moore, Id.* 534. *Wynne* v. *Hawkins,* 1 *Bro. Ch. R.* 179. *Howard* v. *West,* 1 *Sim. & Stew.* 387. *Tibbitts* v. *Tibbitts,* 19 *Ves.* jr. 656. *Bardswell* v. *Bardswell,* 9 *Simons,* 320. *Pope* v. *Pope,* 10 *Simons,* 1. *Knight* v. *Knight,* 3 *Beavan,* 148. 1 *Jarman on Wills,* 338. 2 *Story's Eq.* § 1070. And we notice in the foregoing case of *Bardswell* v. *Bardswell,* that the eminent counsel say, that to raise a trust in a case like the present, it must be ascertained what proportion each child is to take—a position not disputed, either by the opposing counsel, or by the court. And indeed, this must follow from the doctrine, that the trustee has no right, upon his own discretion, to make distribution. And in the case of *Pope* v. *Pope,* before cited, the court, in deciding against the trust, alludes to the fact, that, in that case, the wife, who, as in this, was the devisee, had a discretionary power of distribution among the children, according to her estimate of their wants and deserts.

We think, in the will before us, that there is as much of this uncertainty of description, and of the portions which each child was to take, and as much of discretionary power conferred upon the devisee, as was adjudged, in many of the cases referred to, to be sufficient to defeat the trusts there claimed. By this will, the testator, after devising to his wife an unqualified and beneficial fee-simple estate in all his property, recommends to her to give the same to his children, at such time and in such manner as she *shall think best.* Under this power, she could give it to them, at any time during her life, or at her decease ; absolutely, or subject to conditions ; equally, or in unequal shares, as she might believe their necessities or their merits might demand or justify. And thus the way the property should go, and what each child should have, did not depend upon the testator's will, but upon the discretion or caprice of his wife. To give effect to the plaintiffs' claim, we must, at least, reject all that part of the will,

which, in positive language, confers a discretionary power upon the testator's wife.

2. It was not only conceded, but claimed, by the plaintiffs' counsel, on the argument, that *Abby H. Gilbert,* was not only a trustee for her children, but that she herself took a beneficial life interest under the will : it seemed, as they thought. a harsh construction, to say, that she took nothing but a naked trust ; and therefore, that she must be considered as taking a beneficial interest for life.

By what rule of interpretation we can adopt this complex view of the language of the will, we do not know. The only language importing any interest in the wife, is that which gives to her an absolute fee-simple estate—" To her and her heirs forever." And there are no words in any subsequent part of the instrument, which operate, or were intended, to restrict the full and legal import of this language, and reduce her interest to a life estate, or any other, short of a fee-simple absolute ; such as is often found in wills. Indeed, in nearly all, if not in all, of the cases of this sort of trust, it is evident from the explanatory or positive language of the wills, that the testators intended to create no greater interest in the trustees, than a life estate ; as in *Malim* v. *Keighley,* 2 *Ves.* jr. 333. *Wright* v. *Atkins,* 19 *Ves.* jr. 299. *Pierson* v. *Garnett,* 2 *Bro. Ch. R.* 38. *Harding* v. *Glynn,* 1 *Atk.* 469. and other cases.

We have not been able to distinguish this case, in this respect, from the cases of *Meredith* v. *Heneage* and *Bardswell* v. *Bardswell,* in both of which the court pronounced against the recommendatory trusts there claimed. In the former, the estate was given to the testator's wife, and her heirs and assigns, followed by the strongest expressions of confidence and entreaty, that she would devise and bequeath it according to his very clearly expressed wishes. It is true, the court there laid some stress upon the words, " unfettered and unlimited," and some other expressions, which were supposed to corroborate the legal import of the technical language of the will, by which a fee-simple had been already conferred upon the wife. And in the latter case, the estate was given by the will to the testator's son *Charles,* his heirs, executors, &c. to and for his and their use and benefit, well knowing that he would discharge the trust reposed in him, by

*Tolland,*
August, 1848.
———————
Gilbert
*v.*
Chapin.

remembering certain other of the testator's children. The language of that will creating a fee-simple in *Charles,* the son, was not more expressive than is found in our ordinary deeds of conveyance used in this state; and in reference to it the vice-chancellor says, "if we take the words in their common and ordinary sense, the testator has given the property to his son absolutely, and has given a recommendation merely of his other children, to the kindness of the son." In that case, the counsel in support of the trust did not claim, as they do in this, that the devisee took any life estate, or other beneficial interest; but expressly disclaimed it, thereby conceding, that he took an absolute estate, or nothing but a trust—a concession, which, we think, would have been made in this case, if the devisee had been a child or a stranger, rather than wife. And it is as observable in this case, as it was in the case of *Bardswell* v. *Bardswell,* that the gift or devise looks to the heirs, as well as to the devisee herself, while the trust, if there be one, is confined to the devisee personally and alone.

We therefore conclude, as did the court in the case of *Lawless* v. *Shaw,* 1 *Lloyd & Goold* 154. that "since the late authorities, it is difficult to raise a trust upon words of recommendation, when the property is vested, in words, absolutely and beneficially, in the devisee."

3. We have considered this will, as if it came to us subject to the authority of the *English* cases to which we have referred, especially the modern cases. And indeed, it is claimed, that the case of *Bull* v. *Bull,* 8 *Conn. R.* 48. has recognised the doctrine of those cases, and has incorporated the principle of recommendatory trusts, as received in *England,* into our law. We do not so regard that case. If we concede, that the court, in the case of *Bull* v. *Bull,* was justified in declaring that *James* and *Thomas Bull* took no beneficial estate themselves, under the will of their brother, it would follow, as a necessary consequence, that they were trustees for somebody else. There was, then, a trust in that case; but it was not raised, by the commendatory language of the will. The question was, for whom were they trustees? We are not called upon, now, to express our views of the extra-judicial opinion advanced by the judge, who drew up the reasons in that case, upon the subject of recommendatory trusts,

governed, as he must have been, by the ancient cases to
which he refers. But clear it is, as we think, that the lan-
guage of recommendation, in that will, only went to point out
the objects of the testator's bounty, and not to raise the trust.

We believe, that we are at liberty to consider ourselves
unfettered by precedent, and to construe this will, as all wills
should be understood, in conformity with the intention of the
testator, derived from the natural import of his language,
connected with the condition of his family and estate.

It is said, that precatory language, or words of recommen-
dation, is expressive of a testator's will and intention; and
that such will, whenever and however declared, courts are
bound to regard and carry into effect. It is true, that such
forms of expression declare a wish—a preference—but not a
*will*, in its appropriate sense. They express an intention, or
rather a desire, not absolutely, but with a qualification or con-
dition, that such desire shall nevertheless be subject to the
future discretion and action of the devisee. And the distinc-
tion between this and an imperative direction, which, in legal
parlance, is a will, is very intelligible and clear. But in this
devise, we have something more than the language of rec-
ommendation, understood according to its legitimate defini-
tion, to satisfy us, that nothing imperative was intended, in
behalf of the children of the devisor; for he proceeds be-
yond this, and, by words the most appropriate, leaves the
whole time and manner of distribution to the final controul
of his wife.

We need make no enquiry after the motives of the testa-
tor, although it is not difficult to perceive them. We may
think it unnatural, or at least unusual, that a father should,
under any circumstances, disinherit his young children, who
could have given him no occasion of offence. And it would
be almost equally strange, if he had intended to leave a des-
titute wife. He intended neither; but rather, in a prudent
way, to provide for them all. He supposed the interests of
his children would be safe, if committed to the care of their
surviving parent, who had motives equally strong as his own
to promote and protect them; and he intended to place in
her hands, and subject to her entire disposal, the means of
doing so, with no other limitation, than her judgment and
parental affection, controuled, as they would be, by future

events, which he could neither foresee nor provide for. To these he was willing to trust, and to substitute his wife in his own stead.

We must presume, that the testator well knew the difference between a direction and a request—between an imperative disposition of his estate, and a mere recommendation; and having, as owner of the property, equal power to direct as to recommend, that he meant what he said. We cannot safely interpret written instruments, deliberately and solemnly made, upon any other hypothesis; and when we depart from this, we shall find ourselves employed rather in the making of wills and deeds, than in giving them effect, when made by others.

A majority of the court, therefore, upon a careful consideration of this will, and yielding, as we believe, to the obvious meaning of its language, and yet with a proper deference to judicial opinions elsewhere expressed, are constrained to say, that the wife of the testator, *Abby H. Gilbert,* took an absolute estate under the will of her husband, in the land in question; and, of course, that her after-married husband, the defendant, has a life estate in it, as tenant by the curtesy. And we advise, that judgment be rendered in his favour accordingly.

In this opinion Storrs and Hinman, Js. concurred.

Waite, J.    *William Gilbert,* by his last will, gave all his estate to his wife and her heirs forever. *recommending* it to her to give the same to his children, at such time and in such manner as she should think best. He afterwards died, leaving his wife and two daughters, the plaintiffs, surviving him. She subsequently married the defendant, by whom she had two other children, and by her last will, after directing the payment of a certain note, executed by her and her last husband, devised all her estate to the plaintiffs, her children by her former husband.

They now bring their action to recover the possession of the real estate, which belonged to their father, at the time of his decease. The defendant, who is in possession, claims, that by reason of his marriage with the mother, he has acquired a title as against the plaintiffs, as tenant by the curtesy.

The sole question submitted to our consideration is, whose title shall prevail.

By a long course of decisions in *England,* for more than a century past, the rule has become well established, that words of recommendation, request, entreaty, wish and exhortation, addressed to a devisee, will make him a trustee for those persons in whose favour such expressions are used, provided the testator has pointed out, with sufficient certainty, both the subject matter and the objects of the intended trust.

Thus, in one of the earliest cases upon this subject, where a testator devised copyhold lands to his wife in fee, adding these words, " *not doubting* but that my wife will dispose of the same to and among my children, as she shall please ;" it was holden, that there was a trust for the benefit of the children. *Massey v. Sherman, Ambler,* 520. (1739.)

That decision has never, to my knowledge, been overruled ; but, on the contrary, the doctrine of that case has often been recognized in subsequent cases, and by our best commentators, as settled law. 1 *Jarman on Wills,* 334. 2 *Sto. Eq.* 328.

It is impossible for me to distinguish that case from the one under consideration. There, as in this case, was a devise to the wife in fee, with power to dispose of the same among the testator's children, as she pleased. Almost the only difference between the cases consists in the words creating the trust. In the one, the expression is *not doubting,* and in the other, *recommending.* The effect of this last word in a will, has been fully considered in a more recent case ; and it was holden, that it created a *trust,* and did not confer a mere *discretion.* *Malim v. Keighley,* 2 *Ves.* jun. 333.

Some stress has been laid upon the circumstance, that the wife was clothed with a discretionary power, as to the manner of dividing the property among the children of the testator. But that circumstance can have no more effect upon a trust created in this manner, than upon those created in express terms, where such power is often conferred, provided the objects of the testator's bounty are sufficiently designated. If the power has not been exercised, they take equally. But in this case, no difficulty can arise, as the wife has exercised the power conferred upon her by the will, and given the property equally to the plaintiffs.

But it is said, that in modern times, judges have been disposed to limit the operation of the rule, and not extend it. This is indeed true ; and they have holden, that where the property and the objects of the trust are not sufficiently definite and certain, the rule will not apply. Here, however, there is no uncertainty as to either. The property is that devised to the wife, by her first husband ; and the objects of his bounty are his two children.

Again, it has been urged, that this rule of construction does not always carry into effect the true intent of the testator. Possibly this may be so, in some cases. But in the present case, I think no one can doubt as to the wishes and intent of the testator. He meant that his wife should enjoy the property as long as she pleased—for her life, if she wished—and that afterwards, it should go to their two children. Such was clearly his will, as apparent upon the face of the instrument ; and the only doubt which can possibly exist, is, whether he has used language sufficiently explicit to carry that will into effect. So his wife must have understood it, when she made her will, giving this very property to the children of her first husband, in exclusion of those by her last. She has done every thing she possibly could, after her second marriage, to carry into effect the will of her first husband.

The whole difficulty now arises from the claim set up by the defendant. He insists, that she took a fee-simple under the will of her first husband ; and consequently, that he takes an estate for life, as tenant by the curtesy, which she, by her will, had no power to defeat.

This claim, in my judgment, under the *English* rule, could not be sustained, for a single moment. Whatever disposition some judges have manifested to limit the operation of the rule, not one could be found, who, at the present day, would presume to set it aside, or refuse to apply it to a case falling clearly within it.

Have we any different rule in this state ? So far from it, this very rule has been expressly recognized, by this court, and the *English* decisions cited in support of it, with approbation. *Bull* v. *Bull,* 8 *Conn. R.* 49. And no case has been cited, on the part of the defendant, where this rule has ever been abrogated, by any court, in any state, where the *English*

common law prevails.  If a change is necessary, let it be made by the legislature, as was done with the rule in *Shelly's* case. *Stat.* 389. (ed. 1838.)  Such change will be prospective in it soperation ; the people will have notice, and be prepared to act accordingly.

It is better, far better, that a rule, long established, and often recognized, should stand until abrogated by the legislature, than that it should be made to change, with the changing opinions of judges, whose business it is to apply the law as they find it, and not as they would make it, were they clothed with the requisite power.   As, in my judgment, the plaintiffs' claim is founded both upon principles of justice and of law, I think they are entitled to recover.

*Tolland,* August, 1848.

Gilbert *v.* Chapin.

ELLSWORTH, J.    I concur in the opinion expressed by Judge *Waite.*

No one will contend that technical language is essential to create a trust, or to express a desire or expectation.   We enquire after the intention of the testator, to be learned from the will, viewed in connexion with circumstances.   That intention is, in this case, obvious enough to satisfy my mind ; and hence, guided by the above principles, I hold that Mr. *Gilbert* expected, and directed, that his widow should, before or at the time of her death, divide the property between *his* children.

It has long been settled, that words of *recommendation, request, entreaty, wish* or *expectation,* addressed to a devisee or legatee, will make him a trustee for the person or persons in whose favour such expressions are used ; provided the testator has pointed out, with sufficient clearness and certainty, both the subject matter and the object or objects of the intended trust.

Judgment for defendant.