ROBERT WILLETS and Others, as Executors, etc., of SAMUEL WILLETS, Deceased, Appellants, *v.* SARAH A. WILLETS and Others, Respondents.

*Will — when an absolute gift to persons named, is not converted into a trust by an expression of the testator's wishes as to the disposition to be made of the funds.*

In an action to procure a judicial construction of a will it appeared from the evidence, and the will itself, that the testator was a man of a charitable and benevolent disposition; that he fully understood the nature of trusts and the proper modes of creating them, and the distinction between gifts in trust and such as were intended to be personal or direct and not charged with any trust. Numerous trusts were created by the will, and it contained various devises and bequests to his executors in their official capacity, or as trustees for purposes indicated, which showed that he fully understood the distinction between them as persons and as executors or trustees.

One clause of his will was in these words: "I do give and bequeath to my son Robert Willets, my friends William H. Macy and Charles Griffen, and my nephews John T. Willets and Robert R. Willets and Edward B. Willets, and my son-in-law Edward Merritt, the survivors and survivor of them, the sum of one hundred thousand dollars, relying upon them to dispose of the same for the benefit of such charitable and benevolent and educational purposes as they shall judge will most promote the comfort and improve the condition of the poor; or in case any of my descendants should become poor and needy, then to apply in whole or in part to such descendants."

*Held,* that this was an absolute gift to the persons named, free from all legal trusts or conditions, and that it operated as a valid, effective bequest of the amount named to them individually. .

That the words of survivorship related to the time of the death of the testator.

APPEAL from a judgment of the Special Term, construing the will of Samuel Willets, deceased, and adjudging one of its provisions to be invalid.

*Wilson M. Powell, P. J. Fuller* and *William M. Hoes*, for the appellants.

*H. D. F. Weekes* and *George H. Forster*, for the respondents.

DAVIS, P. J.:

It is impossible to read the will of the testator Samuel Willets, without being impressed with profound respect for the charitableness of his nature. It is shown in the care with which he provides for his family, his relatives, the servants of his household, the poor, and the numerous institutions of charity and learning, which he makes the objects of his bounty. It is apparent that he was a man, who not only took in his lifetime great interests in the many public charities named in his will, but who bore, through his kindness and bounty, close and tender relations toward the poor and the needy.

In construing the provision of his will brought under our consideration by this appeal, it is proper, in seeking for the intention of the testator, not only to bear these facts in mind, but also to observe, what is equally apparent from that instrument, that the testator fully understood the subject of trusts, and the proper modes of creating them, and the distinction between gifts in trust and such as are intended to be personal or direct and not charged with any trust. There are numerous trusts created by the will for various purposes, the validity of none of which are disputed. And so there are various devises and bequests to his executors in their official capacity, or as trustees for purposes indicated, which show that he fully understood the distinction between them as persons and as executors or trustees. It is in the light of all these several facts as they are disclosed by the will, that we come to the consideration of the clause which the court below has adjudged to be void as creating an illegal trust.

That clause is in these words: " I do give and bequeath to my son Robert Willets, my friends William H. Macy and Charles Griffen, and my nephews John T. Willets and Robert R. Willets, and Edward B. Willets, and my son-in-law Edward Merritt, the sur-

vivors and survivor of them, the sum of one hundred thousand dollars, relying upon them to dispose of the same for the benefit of such charitable and benevolent and educational purposes as they shall judge will most promote the comfort and improve the condition of the poor; or in case any of my descendants should become poor and needy, then to apply, in whole or in part, to such descendants."

The first thought that is suggested by the reading of this provision is that the testator's heart was full of an intense desire that his death should not be, so to speak, *at the expense of the poor and needy* who had been in life the subjects of his care. He meant to prevent that affliction to others, which often attends the decease of such a benefactor, when death closes his own hand against them, and withdraws forever the kindly ministrations upon which their necessities had more or less depended. This is by no means an unlawful intention, although the policy of our statutes prevents its execution by the creation of general trusts. It can be lawfully carried out by absolute gifts and bequests to donees and legatees who are thus made almoners of the dead, but only *in fore conscientiae.* Of this fact Mr. Willets was doubtless well informed, when he set about putting $100,000 of his large estate in a position of confidence and hope which, while it should not conflict with the enactments of law, would as he believed enable him to continue even in his grave to be the friend and helper of his clientage of poverty. It is apparent from the provisions of the will touching the trusts he had created, that he well knew he could not do this by the creation of any *trust* not expressly sanctioned by the laws of the State; and he understood also that he could not give any sum for that purpose to his executors as such, or to them as trustees, or in any other mode than by making them absolute donees, and in some form indicating to them his wish and hope that they would apply the money thus donated to his cherished purposes. In selecting the same persons whom he afterwards nominates as his executors, and frequently creates in other provisions of his will his trustees, he was careful to name them in this provision only as his relatives and friends. They were persons who were largely objects of his bounty in other provisions of his will. They were men in whose integrity and honor he doubtless had unbounded faith, and to whom he was will-

ing to hand over the large sum of $100,000 as an absolute gift, untrammeled by any trust or legal obligation that could, if valid, be enforced by suit at law or equity, accompanied only with a simple expression of his desire that it might be applied by them to benefit whatever " charitable, benevolent and educational purposes they shall judge will most promote the comfort and improve the condition of the poor," or relieve the necessities of any of his descendants who might become poor and needy. He doubtless felt that they were gentlemen upon whom the simple expression of his wish would impose a moral obligation stronger than any bond of the law. He had a right so to feel and to act in that belief, provided he did not impress upon the gift itself the conditions of an invalid trust. The sole question for the court to determine is whether in seeking to accomplish his purpose he has wholly defeated it, by creating a trust which is condemned by the statutes of the State. If he have not, then the court, since in testamentary cases it " accepts the will for the reason," will not be in haste to condemn provisions which aim to carry out intentions commendable in morals if of doubtful expediency. The words of gift in the provision in question are clear and positive : "I do give and bequeath to my son * * * and my friends * * * and my nephews * * * and my son-in-law * * * the survivors and survivor of them the sum of $100,000." These are the operative words of the bequest, and they are words of absolute gift to the donees named ; and if the provision stopped with them there would be no question but that the persons named, or the survivors of them living at the testator's death, would have taken the sum named as personal bequests. It is well settled in this State that the words " survivors and survivor " used, as in this case in connection with the persons named as donees, have relation solely to the death of the testator. (Moore v. Lyons, 25 Wend. 119 ; Weed v. Aldrich, 2 Hun, 531 ; 2 Redf. on Wills, 488, and cases there cited.) We think it is undoubtedly so in this case, and that the well settled rule controls their construction. The gift was therefore one to the individuals named or such of them as should survive the testator ; and as they all survived him it is a gift to the several persons named of the whole sum in equal shares. In making the bequest the testator is careful to avoid naming the donees as " executors "

or as " trustees," or using the word " trust" in any form.   The question then is whether in the language that follows the words of gift there is any manifest intention to impose a limitation upon the gift which cuts down the estate given by the preceding language to one of mere trust for any purpose whatever.   Unless such a purpose is manifest a court will not thrust one into the provision for the purpose of defeating the wishes of the testator.   It is not a legitimate province of a court of law or equity to create trusts by construction for the mere purpose of destroying them by adjudging them illegal.   Plain words of gift are not to be cut down by implications which do not arise from necessary construction.   It was said in *Parsons* v. *Best* (1 N. Y. Sup. Ct. [T. & C.], 211), that " a devise or bequest made in clear, positive and express terms, in language known to the law, and which calls for no interpretation, is not controlled or overcome by subsequent ambiguous words inferentially to another intent."   The words of gift in this case are followed by language simply descriptive of the motive that inspired the gift.   Everything is left to the discretion of the donees, and the language used implies nothing more. The word "relying" is only an utterance of confidence.   It is not an imperative expression.   It neither commands nor imposes a duty, but at most indicates the faith of the person using it in the honor or honesty or affection of the person addressed.   After an absolute bequest, precatory words of desire, recommendation or confidence will not convert the legatee into a trustee unless it appear affirmatively that they were intended to be imperative.   (1 Jarman on Wills [5th Am. ed.], 385–693; Story Eq. Jur., 1069.) We think it well settled upon authority that no such force is to be given to the language used by the testator in this case.   In a late case in this court (*Lawrence* v. *Cooke*, 32 Hun, 126), this question of construction came under our careful consideration.   In the opinions of the majority of the court (who in that case held that a trust was created) the authorities bearing upon the subject were very fully collated and examined by Justices Brady and Daniels. I was unable to concur in their views as to the construction of the will in that case, but was glad, under its circumstances, that they were able to reach the conclusion at which they arrived.   They held in substance that the language used by the testator in that case

was not merely a hope, wish, desire, or recommendation or sugges-
tion. "It was," said BRADY, J., "a command established by the
use of the word 'enjoin,' by which he ordered or directed a certain
thing to be done with urgency, admonished or instructed with
authority, commanded and coupled to his confidence already
expressed, a pressing admonition with authority." The words used
were regarded as imperative and not precatory, and it was held that
their mandatory character created a trust in favor of the plaintiff in
that case. The distinction between that case and the numerous
authorities cited and examined by Mr. Justice BRADY is very clearly
pointed out. For example, in *Sale* v. *Moore* (1 Simons, 534) the
testator gave the residue of his estate to his wife, *recommending to
her, and not doubting*, that she would consider his near relations.
In *Meredith* v. *Heneage* (1 Simons, 542) the testator gave his real
and personal estate to his wife *in the full confidence* that in her
future disposition of it she would distinguish the heirs of his late
father, by devising it to such of them as she might think best
deserved her preference. In *Bardswell* v. *Bardswell* (9 Sim., 319)
the estate was given to a son, *well knowing* that he will discharge the
trust that the testator reposed in him by remembering the testator's
sons and daughters who were named. In *Lambe* v. *Eames* (L. R., 10
Eq. Cases, 267) the testator by his will gives to his wife his real
and personal property to be at her absolute disposal in any way she
might think best for the benefit of herself and family. In *Reeves*
v. *Baker* (18 Beav., 372) the devise was to the wife, being fully satis-
fied that she will dispose of the estate given by will or otherwise in a
fair and equitable manner. In *Curtis* v. *Rippon* (5 Mad. Ch., 434)
the testator gave all his property to his wife trusting that she would
use it for the spiritual and temporal good of herself and children,
remembering always the church and the poor. In *Winch* v. *Brutton*
(14 Simons, 379) the testator recited that he was desirous of mak-
ing suitable provision for his wife as well as for his daughter and
grandchild, but in order to mark his abundant confidence in his wife,
and his belief that she would be actuated by the most maternal
regard towards his child, he gave her all his property for her own
use and benefit absolutely, "implicitly relying" on her attachment
to his daughter and granddaughter. In *Greene* v. *Greene* (3 Irish
Rep. Eq. Series, 629), the testator gave his property to his wife well

knowing her sense of justice and love of her family, and having perfect confidence that she would manage the same to the best advantage and benefit of her children. In *Hess* v. *Singler* (114 Mass., 56) the testator, after giving his property to his son, said : "I hereby signify to my son my desire and hope that he will provide by will or otherwise, if he shall have no lawful issue living, that the property he will take under my will shall go in equal shares to the children of my brother and sister." In *Jackson* v. *Housel* (17 Johns., 281) the words were : "I leave and bequeath to my beloved wife and wish her to educate my two daughters with care, and to treat them with kindness and affection," without any devise or bequest. In *Gilbert* v. *Chapin* (19 Conn., 342) the words were : "After the payment of my just debts I give, devise and bequeath all my estate, real and personal, to my wife A., to her and to her heirs and assigns forever ; recommending to her to give the same to my children at such time and in such manner as she shall think best." In *Foose* v. *Whitmore* (82 N. Y., 405) the language was : "I give and bequeath all my property, real and personal, to my beloved wife Mary, only requesting her at the close of her life to make such disposition of the same among my children and grandchildren as shall seem to her good." In *Clarke* v. *Leupp* (14 Week. Dig., 206) the testator bequeathed to his wife all his property, real and personal, to retain or dispose of the same for the benefit of herself and children above named. In the case of *Reid* v. *Atkinson* (5 Irish Rep. Eq. Series, 373), also cited in *Lawrence* v. *Cooke*, the testator used the words " relying with implicit confidence," but the court held that the language was precatory and did not create a trust, and the wife took the property absolutely. In view of these authorities it is impossible, we think, to hold that the word " relying," as used in this case, or the phrase " relying with implicit confidence," as used in *Reid* v. *Atkinson*, or the words " implicitly relying," as used in *Winch* v. *Brutton*, can have any stronger significance and effect than the words " having confidence," which have been used frequently in similar wills. But those words have always been held by the courts not to impose any obligation, or to create any trust. They are not apt words to such a purpose and would not be used by an intelligent testator or scrivener when the design is to make an obligatory charge or trust. (*In re Hutchinson and Tenant*, 8 Eng. L. R.

Ch. Div., 542; *Green* v. *Green, supra*; *Lawrence* v. *Cooke, supra*; *Webb* v. *Wools*, 2 Sim. [N. S.], 267; *Lambe* v. *Eames, supra*; *Roseboom* v. *Roseboom*, 81 N. Y., 359; *Clarke* v. *Leupp, supra*; *Campbell* v. *Beaumont*, 91 N. Y., 465; *Foose* v. *Whitmore*, 82 id., 405; 1 Jarman on Wills [5th Am. ed.], 693, 694; 2 Redfield on Wills, 422, 423; Tiffany & Bullard on Trusts, 224, 225; Lewin on Trusts [2d Am. ed.], 174; *Pennock's Estate*, 20 Pa., 268.) The cases cited in the opinion of the learned judge, in the court below, do not seem to us to sustain the conclusion of the court. In *Levy* v. *Levy* (33 N. Y., 97) there was very plainly a trust created in terms by the will, and the case can only be regarded as holding that where a charitable trust is founded upon the assumption of the validity of a devise of lands situated in another state, in which state the devise is void, the trust cannot be sustained in this State. *Bascom* v. *Albertson* (34 N. Y., 584), held that a bequest by a New York testator to such persons as the judges of another State may appoint after his death to receive it, is ineffectual for any purpose, if unlawful in the state of his domicile, and an express trust created by will, to be executed in the State of Vermont, was held to be void because invalid under the laws of this State. In *Le Fevre* v. *Le Fevre* (2 T. & C., 330), the language of the will in question was: " The remainder of this third, after deducting the above mentioned sums, is to be left to the care of my wife to be disposed of as she shall see fit in charitable purposes." And of this bequest the court said: " It is not given to his wife to use for herself or in such manner as she may deem best, but it is placed in her care to be applied to such charitable purposes as she shall think proper." The failure to make any gift to the wife of the property in that case, presented a very different question from that now under consideration. The later cases of *Prichard* v. *Thompson* (95 N. Y., 76), and *In the Matter of O'Hara*, and *O'Hara* v. *Dudley* (Id., 403, 420), relied upon by the respondent's counsel as controlling of this case, do not appear to us to have any such effect. The case of O'Hara turns upon a transaction which it is held would operate as a fraud upon the law and the heirs or next of kin if allowed to be enforced. Nothing of that kind was, or can be, suggested as affecting this case. The donees to whom the bequest is given are not shown to have had any knowledge of the gift and it is not suggested nor can it be presumed

that they exercised any influence over the mind of the testator by promise or otherwise upon which a suggestion of fraud could be based. In *Prichard* v. *Thompson* (95 N. Y., 76), it was held that where a trust was created by will in favor of beneficiaries so indefinite as to be incapable of ascertainment or identification by a judicial decree, it is invalid. That case has no application to this unless it first be determined that a trust is created by the provision of the will in question.

The court below seems to have been strongly impressed with the fact that the donees, if the gift were not held to be in trust, could disregard the wish of the testator and keep the gift as their own. But that fact is no reason why a trust should be imposed by judicial construction where none has been created by the testator. He acted with knowledge, but with intentional disregard of such a possibility. He was content to rely on his own confidence in their integrity and willingness to heed his wishes, taking knowingly the chances of disappointment. A testator who can give the whole of a thing absolutely by will can give it with any wish he chooses to express as to its disposition by an absolute donee, when that is not an enforceable limitation for the benefit of another. The execution of the wish is simply the exercise of the absolute ownership given. The disappointment of it is only another exercise of the same absolute ownership, not commendable it is true in morals, but justifiable in law because the only appeal is to the forum of the donee's conscience, unless some fraud by way of inducement has been practiced on the testator or some other instrument in writing has been executed which evidences an intention of the testator to accomplish a purpose in fraud of the statutes of trust.

This case stands concededly free of all such elements and the court has nothing more to do than to hold the gift a valid one adopted, as to its form, by the testator as a means to an end not unlawful and therefore not void. His anxiety to have a comparatively small portion of his large accumulations, still continue to keep alive even in his ashes, "the wonted fires" of his beneficence need not be thwarted by the courts. Our examination of the case, both upon authority and upon its merits, appears to us necessarily to lead to a reversal of the judgment of the court below in so far as it affected the provision of the will now in question.

This however, we think, under the circumstances, should be with costs of this appeal both to the appellants and the respondents, to be paid out of the fund in controversy on the appeal.

BRADY, J., concurred.

Present — DAVIS, P. J., and BRADY, J.

Judgment reversed, with costs of appeal both to appellants and respondents to be paid out of the fund in controversy on the appeal, and judgment ordered declaring the bequest in question valid.