## WITHERINGTON v. HERRING.

(Filed March 6, 1906).

### *Trusts—Revocation.*

1. The words, in a letter from plaintiff's intestate to the defendant, "Until I give you further instructions, hold the sum of $1,000 for the support of my (natural) child in case of my death, for such a time as it may hold out," create a trust and not an agency that would expire with the death of the principal.

2. The trust was not revoked by the will which requests testator's wife to carry out his wishes in regard to the care and custody of the child, but makes no provision for the child beyond the request to his wife, and there is no instruction or reference in the will to this fund and no further instructions were sent to the defendant.

3. To create a trust, no technical terms need be used. It is sufficient if the language shows the intention to create a trust, clearly points out the property, the disposition to be made of it and the beneficiary.

4. A power of revocation may be reserved and is perfectly consistent with the creation of a valid trust. If never exercised during the lifetime of the donor and according to the terms in which it is reserved, the validity of the trust remains unaffected.

ACTION by M. S. Witherington, Administrator, with the will annexed of W. A. Herring, against N. B. Herring, heard at the November Term, 1905, of the Superior Court of WILSON. From a judgment for the defendant, the plaintiff appealed.

*Mark Squires, Shepherd & Shepherd* and *Aycock & Daniels* for the plaintiff.

*Connor & Connor, F. A. Woodard* and *C. E. McCullen* for the defendant.

CLARK, C. J.  W. A. Herring, resident in Mississippi, assumed the care, education and support of his natural child which, through his brother, the defendant, Dr. N. B. Herring, he placed in the custody of a lady in this State.  There came into the hands of said defendant the sum of $1,500, which he had collected for W. A. Herring, in regard to which the latter wrote Dr. Herring 19 April, 1902: "Retain what means of mine you have on hand until I am able to think and act further, and if I never do, use as you see proper as in the first arrangements made."  Again on 13 September, 1902, W. A. Herring wrote Dr. N. B. Herring in regard to the care and custody of the child, and added, "In the meantime, until I give further instructions, hold the sum $1,000 and what of the first fund is left, for the support of the child in case of my death, for such a time as it may hold out."  In January, 1903, W. A. Herring died without having given any further instructions, and N. B. Herring, having already disposed of part of this fund according to his instructions, in the support and care of the child, there was in his hands at the death of W. A. Herring, $868.97, unimbursed.  In the first item of his will, the latter mentions this child and states that he has supported her from her birth and will continue to do so if he lives, but if he should die first he turns over the care and custody of the child to his wife, and requests her to carry out his wishes in regard to the child, and, after bequeathing and devising certain property to his wife, there is a residuary clause in the will in favor of his nieces, but there is no provision for the child beyond the above request to his wife. There is no instruction or reference in the will to this fund and none was sent by W. A. Herring to Dr. N. B. Herring, subsequent to the above letter of 13 September, 1902.

This action is by the personal representative of W. A. Herring to recover the fund in hands of N. B. Herring. There is no allegation that it is needed for the payment of debts, and the only question is whether N. B. Herring held

the fund as trustee, or as an agent, whose agency would expire with the death of his principal.

The words "until I give further instructions, hold the sum $1,000 and what of the first fund is left, for the support of the child in case of my death, for such a time as it may hold out," clearly indicate a trust. There were no further instructions, and there is no provision for the child in the will. The relationship and the attitude of the father as to the custody, care and education of the little girl, both in his correspondence with his brother and by the request made of his wife in his will, strengthen our view that he had no intention to revoke the trust by implication, and there is no express revocation.

The declaration of a trust in personalty is not required to be in writing, and if in writing, it may be contained in letters or other writings. 28 A. & E. Enc. (2 Ed.), 880. Indeed, section 7 of the Statute of Frauds has not been re-enacted in this State. *Ibid.,* 876. No technical terms need be used. It is sufficient if the language used shows the intention to create a trust, clearly points out the property, the disposition to be made of it and the beneficiary. 1 Bispham Eq., sec. 71; 28 A. & E. Enc. (2 Ed.), 910.

A power of revocation may, however, be reserved and is perfectly consistent with the creation of a valid trust. If never exercised during the life time of the donor and according to the terms in which it is reserved, the validity of the trust remains unaffected. 28 A. & E. Enc. (2 Ed.), 900, 950; *Stone v. Hackett,* 78 Mass., 227; *Kelley v. Show,* 185 Mass., 288; 1 Beach Trusts, sec. 81, and cases cited. The trust was not revoked and the defendant should proceed to execute it.

No Error.