ESTATE OF ROBERT L. HOLT, JAMES H. HOLT, AND DAISIE HOLT GREEN, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12636. Promulgated December 5, 1928.

*E. S. Parker, Jr., Esq.,* and *Jesse I. Miller, Esq.,* for the petitioners.
*Frank T. Horner, Esq.,* for the respondent.

OPINION.

MARQUETTE: This proceeding involves five items of property. As to four of these items the question relates to valuation; as to the fifth we must decide whether certain purported gifts actually divested the property from the decedent.

As to the two tracts of land owned by Holt, the Fort Smug Tract and the Dickey Tract, there is no controversy. The petitioners admit, and there is no evidence to contradict, the propriety and reasonableness of the figures determined by the respondent; and the valuations so determined of $60,000 and $11,000, respectively, will stand.

As for the 100 shares of stock of the Burlington Hotel Co., we are of opinion that the respondent was in error in valuing it at $6,600. At the time of Holt's death he held none of this stock, but was obligated to buy it by his subscription therefor. This obligation was fulfilled and his part of the agreement carried out after his death by his executors, the present petitioners. The stock, when purchased, had the same value as it had when Holt was living; it has retained the same value ever since; and the evidence shows that value to be little or nothing. There never has been any readily realizable market value for this stock. However, the petitioners seem hopeful that they may be able to obtain 25 per cent of its par value, namely, $2,500, and concede it was worth that amount at the time of Holt's death. The evidence certainly shows it was not worth more than that amount and we therefore find that its value should be fixed at $2,500 for estate-tax purposes.

There is no evidence before us from which we may draw any conclusion as to the real value of the 980 shares of Glencoe Mills stock held by Holt when he died. It does appear that one item of $49,894.19, which was the amount expended by the Mills Company to develop a water power on Holt's Fort Smug tract of land, was carried on the books of the company as an asset and may have been included in reaching a valuation of the stock. This sum has already been allowed as a part of the value of the Fort Smug tract of land, and if it were clear to us that the respondent, in placing the mills stock at a higher valuation than that returned by the petitioners, had simply added the amount of this item for water power development, we would be disposed to disallow the respondent's contention. But the record does not disclose such a state of facts. The difference between the petitioners' valuation of the stock and the respondent's determination is only $35,338.80, or $14,555.39 less than the amount of the water power item. The respondent's determination, therefore, was evidently based upon something other than the cost

of the water power development. As the petitioners have failed to show wherein the respondent's determination was erroneous, that determination will be sustained.

This brings us to a consideration of the last question involved herein, namely, were the bonds, amounting to $165,000, which Holt had put aside for his sister as her property, gifts *in praesenti;* were they gifts to take effect *in futuro*, after his death; were they the corpus of a trust estate created by Holt for the present benefit of his sister; or were they properly a part of his estate?

There can be no question that the decedent desired and intended to provide for his sister and her family a definite and liberal income, through the medium of these bonds. There can be no question but that he regarded these bonds as her property, not his own, after he had placed them aside and marked them as hers. He repeatedly wrote her that the bonds were hers; he often told his brother James that the bonds belonged to his sister; in his account books he wrote and signed a memorandum to that effect; he suggested that she take and keep the bonds, and when she declined, he continued as before, sending her the interest and referring to them as her property. There was no actual physical delivery of the bonds to her; and upon that ground the respondent contends that no valid gift had been made. In support of his contention the respondent relies upon *Sizer* v. *United States*, decided April 16, 1928, by the Court of Claims. That decision is without doubt correct but the facts there are not the same as the facts before us. This is also true as to *Thomas* v. *Houston* (N. C.), 106 S. E. 466, cited by the respondent.

To constitute a valid gift *inter vivos*, there must be a delivery either actual or constructive. A mere intention to give is not sufficient. As there was no delivery of the bonds in question to the donee, we must find that no gift *inter vivos* was made. On the other hand we are convinced from the facts before us that this was not a gift *in futuro*, to take effect after Holt's death. Undoubtedly he intended to create a present, income-producing estate for his sister, with respect to which she was to have the beneficial interest at once, rather than in prospect for the future. In so providing for his sister an adequate income, Holt dedicated certain bonds to that purpose. He separated them from his own securities; offered to turn them over to his sister, but retained possession of them at her express wish; treated them in every way as the property not of himself but of his sister, and accounted to her for the income from the bonds. We are also of opinion that he did create a present trust for his sister, becoming a voluntary trustee for the purposes of the trust.

It is well settled that one may create a trust in his own property by constituting himself trustee, provided his words or acts clearly

and unequivocally denote an intention to hold henceforth as trustee for the benefit of another. As the nature and effect of a transaction of this character is that the legal title remains in the donor for the benefit of the donee, no transfer or assignment of legal title is necessary. 39 Cyc. 66, 67. And in such case no further delivery is necessary, 39 Cyc. 641. No formal, technical, or particular words are necessary to create such a trust, provided the circumstances show beyond a reasonable doubt that such a trust was intended. 39 Cyc. 57; *Witherington* v. *Herring*, 140 N. C. 495; 53 S. E. 303; *Blackburn* v. *Blackburn* (N. C.), 13 S. E. 937. This trust, the evidence shows, gave to the sister an immediate beneficial interest. It was not intended to take effect after Holt's death. He contemplated that she should have, and she did have, the present enjoyment of the property. In our opinion the equitable title to said bonds was in Holt's sister both at the time of his death and continuously from some time prior to November 22, 1920. As Holt did not die until July, 1923, the two-year clause in section 402 (c) of the Revenue Act of 1921 does not apply.

The estate tax should be recomputed, omitting the amount of these bonds; valuing the Burlington Hotel Co. stock at $2,500, and leaving the valuation of the two tracts of land and the Glencoe Cotton Mills stock at the amounts determined by the respondent.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

SMITH, PHILLIPS, MILLIKEN, and MURDOCK concur in the result.