LILIAN K. BLAKE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 26374.   Promulgated June 3, 1931.

*Henry F. Parmelee, Esq., Curtiss K. Thompson, Esq.*, and *Barry Mohun, Esq.*, for the petitioner.
*J. E. Marshall, Esq.*, for the respondent.

560

OPINION.

TRAMMELL: The sole issue as defined by the pleadings has been stated in the introductory paragraphs of this opinion and need not be repeated here.

The petitioner relies upon two separate points in support of her contention that 300 shares of capital stock of the T. Whitney Blake Company were held in trust by her for her son Kaisley: (1) that a trust was created for the benefit of Kaisley by the provisions contained in her husband's last will and testament; and (2) that she

effectually parted with the equitable ownership of the trust *res*, thereafter deriving no income therefrom taxable to her as such, (a) by her compliance with the requirement of her husband's will, and (b) by designating and setting apart the trust *res*, and (c) determining and declaring the terms of the trust, and (d) thereafter by way of further assurance executing a transfer, and (e) by carrying out the terms of the trust.

In *Hughes* v. *Fitzgerald et al.*, 78 Conn. 4; 60 Atl. 694, the Supreme Court of Errors of Connecticut, considering whether a trust had been created by use of the words in a will "to dispose of as she may deem best for the benefit of my daughters, Mary, Johanna, Elizabeth, or either of them," the court said:

* * * Whether a trust has been created becomes, therefore, often a question of intention, "to be gathered from the general purpose and scope of the instrument." *Colton* v. *Colton*, 127 U. S. 300–310, 8 Sup. Ct. 1164, 32 L. Ed. 138. In determining from particular words and terms of a will whether a certain gift was intended to be made in trust, there are, however, some well-established rules which should be considered; and among those applicable to the present case is the settled law in this state that a trust will not be raised by expressions in a will importing recommendation, confidence, or desire, unless it clearly appears that they were intended to be used in an imperative sense. *Bristol* v. *Austin*, 40 Conn. 438–447; *Harper* v. *Phelps*, 21 Conn. 257–269; *Gilbert* v. *Chapin*, 19 Conn. 342–351.

* * * From all the language of the will, we are satisfied that the testator did not intend to use the words "to dispose of as she may deem best for the benefit of my daughters," etc., in a mandatory sense; that it was intended that in so far as Johanna and Elizabeth were to be beneficiaries, they were to be beneficiaries of Mary, rather than of the testator; and that it was the testator's intention to give his daughter Mary an absolute estate in fee simple in the land, and an absolute title to all the property left her by the will.

Considering the will in its entirety, we are satisfied that the words, "I know that my wife will herself make such provision for them out of my estate as I should approve and desire," were not intended by the testator as mandatory, but merely declaratory of his confident feeling that his wife would make ample provision for his children. Indeed the statement of the testator that, "I make no separate provision for any children that I may have," definitely negatives any intention on his part to use those words in the imperative sense. Therefore, we shall consider whether the things done by the petitioner respecting the subject matter were sufficient under the law to create a trust.

Perry on Trusts, Vol. I, 6th Ed., at page 95, says, in discussing the creation of trusts in personalty:

When a person *sui juris* orally or in writing explicitly or impliedly declares that he holds personal property *in praesenti* for another, he thereby constitutes himself an express trustee. Under these decisions trusts may be created by parol in any mere personal property, as in the shares of corporation, although the corporations themselves own real estate.

The Supreme Court of Errors of Connecticut, in *Plum Trees Lime Co.* v. *Keeler*, 101 Atl. 509, cites with approval the following definition of a trust:

Where there are rights, titles, and interests in property distinct from the legal ownership. In such cases, the legal title, in the eye of the law, carries with it, to the holder, absolute dominion, but behind it lie beneficial rights and interests in the same property belonging to another. These rights, to the extent to which they exist, are a charge upon the property, and constitute an equity which a court of equity will protect and enforce, whenever its aid for that purpose is * * * invoked.'

In another Connecticut case, *McDonald* v. *Hartford Trust Co.*, 132 Atl. 902, the court says:

Trusts of personal property may be created verbally, by direct and express statements, or by implication from the circumstances, where the objects and purposes of the transfer may be held to express the true intention of the transferor to be the creation of a trust.

In *Estate of Robert L. Holt*, 14 B. T. A. 564, the decedent had acquired certain bonds, which were placed in a safe-deposit box in the bank used jointly by him and his brother for the safe keeping of papers relating to their father's estate, of which they were trustees. Each held a key to the box. Those bonds were placed in an envelope marked, " This package contains," then the contents were listed, with the further words, "and is the personal property of Mrs. Daisie Holt Green, Charleston, S. C., R. L. Holt." The endorsement was in the handwriting of the decedent. In holding that the decedent created a present trust for his sister, becoming a voluntary trustee for the purpose of the trust, the Board said:

It is well settled that one may create a trust in his own property by constituting himself trustee, provided his words or acts clearly and unequivocally denote an intention to hold henceforth as trustee for the benefit of another. As the nature and effect of a transaction of this character is that the legal title remains in the donor for the benefit of the donee, no transfer or assignment of legal title is necessary. 39 Cyc. 66, 67. And in such case no further delivery is necessary. 39 Cyc. 641. No formal, technical, or particular words are necessary to create such a trust, provided the circumstances show beyond a reasonable doubt that such a trust was intended. 39 Cyc. 57; *Witherington* v. *Herring*, 140 N. C. 495; 53 S. E. 303; *Blackburn* v. *Blackburn* (N. C.), 13 S. E. 937. This trust, the evidence shows, gave to the sister an immediate beneficial interest. It was not intended to take effect after Holt's death. He contemplated that she should have, and she did have, the present enjoyment of the property. In our opinion the equitable title to said bonds was in Holt's sister both at the time of his death and continuously from some time prior to November 22, 1920. As Holt did not die until July, 1923, the two-year clause in section 402 (c) of the Revenue Act of 1921 does not apply.

While the status of the alleged trust must be judged by the things done in the latter part of 1921 and early in 1922, and not by subsequent happenings and events, we must take into consideration all of the circumstances, beginning with the will of the testator down

to the time when a formal trust indenture was executed by the petitioner in December, 1923, in order to establish her real intention, for after all the intention is the vital element with which we are here concerned. See *Colton* v. *Colton, supra.*

The record shows that the petitioner and her husband had discussed ways and means of providing for their children many times. They no doubt had reached some sort of understanding with respect to the matter for in the decedent's will he expressed perfect confidence in his wife. He made no provision for his children knowing, as he said, that his wife would do so out of his estate in a manner which he himself would approve and desire, indicating very clearly that they had in fact reached a satisfactory understanding before his death.

After the death of the petitioner's husband, she and her daughter, her daughter then being of mature age, talked the matter over and reached an understanding. With respect to the boy, who was then only ten years of age, the petitioner at first was somewhat undecided as to the precise method of carrying out the arrangement.

On December 27, 1921, the petitioner surrendered 1,075 shares of capital stock of the T. Whitney Blake Company which she had received from her husband's estate, and had transferred to her daughter 650 shares thereof, receiving in her name a certificate for 425 shares. The shares so transferred to her daughter were with the understanding that the dividends as received thereon should be invested, and the income from said investments paid to the petitioner that she might maintain the family therewith.

On the same date aforesaid, that is, December 27, 1921, petitioner, having decided the proper provision to be made for her son, in the presence of her daughter, placed the stock certificate for 425 shares just referred to in an envelope, writing thereon, " 300 shares of this for Kaisley," or words of similar import, which envelope she placed in her safe-deposit box at the bank. The petitioner had been advised by a man in whom she had implicit confidence that her act was sufficient to establish a trust for Kaisley.

The petitioner testified that it was her intention to make an irrevocable gift of those shares, but naturally, because of Kaisley's tender years and because the family necessarily had to be maintained and supported, she did not care to do so without, as she expressed it, some " strings " to it. Her intention was that the shares should be put aside under a plan similar to that understanding which she had with her daughter, that is, the dividends were to be invested and the income therefrom used for the maintenance of the family.

Still seeking to make certain that what she had done was sufficient to establish a trust, the petitioner early in 1922 consulted one Curtiss,

the president of the Union & New Haven Trust Company, bankers for the Blake family and also administrators under the will of the decedent, and she exhibited the envelope to him, marked as has been described, and explained what she had done and what she sought to accomplish thereby. Curtiss made several suggestions which finally resulted in the execution of an irrevocable stock power of attorney, assigning and transferring 300 of the 425 shares of stock of the T. Whitney Blake Company in blank, which said power was pinned to the certificate, put back into the envelope and then returned to the safe-deposit box. Upon the execution of said power petitioner instructed that the dividends from the said 300 shares should be invested separately and that the income from such investments should go to her. Thereafter, investments were made by the bank pursuant to that understanding and when made they were divided into three lots and labeled for " Kaisley," " Mrs. Blake," and " Miss Hayes," depending upon the account for which purchased. At the suggestion of Curtiss the petitioner finally engaged counsel, in December, 1923. Preparatory to the execution of a formal trust indenture and as a protective measure in the event the petitioner should die before such instrument could be prepared, her attorney prepared, and she executed on December 12, 1923, a statement of the facts for guidance in preparation of the formal trust indenture in which she recited substantially the same facts which we have dealt with somewhat at length hereinabove. In said statement she recited that she had retained physical possession of the stock and the bonds purchased with the dividends, but that she has at all times kept them separate from her other funds, as trustee. Thereafter, on December 26, 1923, the petitioner entered into a formal trust agreement with the Union & New Haven Trust Company, declaring a trust in said 300 shares of stock. The terms of the formal trust indenture, except for the fact that they were more definite and specific, were substantially in accord with the treatment of the 300 shares of stock and the income therefrom during 1922 and 1923 before the said indenture was executed.

While the instant case differs somewhat from *Estate of Robert L. Holt, supra,* in facts, there is no material distinction in principle. Of course it does not appear that petitioner here notified the beneficiary, as did the decedent there, but the reason therefor was that Kaisley was an infant, and to do so would have been useless. But in the creation of a trust an actual delivery and acceptance by the beneficiary is not required as in the case of a gift. It is simply a question of evidence as to whether a trust was actually created.

Petitioner's daughter was fully conversant with the details of her plans, as was the auditor of the T. Whitney Blake Company whom

she consulted with respect thereto, and also Curtiss, and possibly other officers of the trust company of which he was president. Another distinction to be found in the two cases is that, there, the income from the securities was turned over to the beneficiary, whereas the dividends from the 300 shares in the instant case were invested in other securities and made a part of his estate, the income from which investments, however, was used for the support of the petitioner and her family. But here again it must be remembered that because of Kaisley's infancy the funds could not have been turned over to him and, furthermore, the petitioner no doubt needed some income with which to educate and maintain her children. The court said in *Edson* v. *Lucas*, 40 Fed. (2d) 398:

\* \* \* The retention by the donor of some beneficial interest in the property or some right to share in the income or proceeds therefrom, which is not inconsistent with the passing of the full legal title or with the immediate possession and control of the property by the donee, does not defeat the gift. \* \* \*

In one important particular the instant case is stronger than the *Holt* case in the fact that here an irrevocable power of attorney assigning the 300 shares of stock was early in 1922, prior to the payments of any dividends herein involved, executed in addition to the writing on the envelope.

The petitioner had a perfect right to constitute herself a trustee and we believe all of the circumstances, beginning with the expression of the decedent in his will, which charged her with the moral obligation, at least, of providing for her children, and considering the acts done to set apart for her son, as she did in the case of her daughter, a certain portion of the estate left by her husband, and the fact that her original plan was carried out down through 1922 and 1923 until finally a formal trust indenture, embodying substantially the plan already in operation, was entered into, we believe her intention to create a trust has been clearly established. There was a designated beneficiary, a trust *res*, and a trustee, the petitioner, all the essentials of a valid trust. The income of this trust was invested in other securities for Kaisley and became a part of the corpus. The income from investments of the dividends is the income which petitioner received, but that income is not here involved. The income here in controversy is the dividends accruing to or received by the trust from the 300 shares of T. Whitney Blake Company stock, and not the income from the investments made therewith. What the petitioner received and what she reserved for her own use was income from the investments of those dividends, not the dividends themselves. The dividends themselves belonged to her son as beneficiary of the trust and were included and treated by all concerned as a part of the trust corpus. They were received in trust for the son. The

fact that any income actually received by the petitioner might be taxable to her does not affect the question as to the dividends not received by her but invested for her son.

We believe that the circumstances show beyond a reasonable doubt what the petitioner's intention was. We think, therefore, the respondent erred in holding the petitioner taxable upon those dividends paid upon the 300 shares of stock set aside in trust for Kaisley.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

MARQUETTE, STERNHAGEN, MURDOCK, AND MCMAHON dissent.