Estate of John T. Harrington, Charles F. Smith, Trustee v. Commissioner.
Estate of Harrington v. Commissioner
Docket No. 104194.
United States Tax Court
1943 Tax Ct. Memo LEXIS 173; 2 T.C.M. (CCH) 540; T.C.M. (RIA) 43369; July 29, 1943
*173 Donald J. Lynn, Esq., A. L. Jones, C. P. A., and C. F. Smith, Trustee, pro se, for the petitioner. Lawrence R. Bloomenthal, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: Respondent determined a deficiency of $2,201.12 in income tax for the calendar year 1938. Petitioner claimed an overassessment in its petition of $580.51. By amended answer respondent seeks to increase the deficiency to $4,283.46. The sole issue for our determination is whether or not petitioner realized either capital gain or ordinary income upon the settlement of certain obligations with stock. Findings of Fact Petitioner is a fiduciary whose address is, and was at all times material, 1200 Mahoning Bank Building, Youngstown, Ohio. The original return was filed with the collector of internal revenue for the eighteenth district of Ohio on or before March 15, 1939. The tax as shown thereon was paid on March 15, 1939. An amended return for the year 1938, together with claim for refund for that year of $599.90, was filed with the collector on or about June 9, 1939. On December 29, 1931, John T. Harrington, decedent, and the Republic Steel Corporation, hereinafter referred *174 to as Republic, entered into a contract whereby Republic authorized decedent to subscribe in its name for 1,000 shares of capital stock of the Union National Bank of Youngstown, Ohio, sometimes referred to as Bank stock. The amount was $200,000 par value. Decedent covenanted and agreed that he would, on or before one year from the date of that subscription, purchase from Republic and Republic agreed to sell one-half of the number of shares so subscribed in its behalf. After a recital of the facts motivating the agreement, it was provided as follows: 2. Said Harrington hereby covenants and agrees that he will, on or before one year from the date of said subscription, purchase from Republic, and Republic agrees to sell, one-half of the number of shares so subscribed in its behalf, and said Harrington agrees to pay Republic therefor the full sum of One Hundred Thousand Dollars ($100,000) with interest at six percent (6%) per annum from the date of said subscription. 3. This agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, successors and assigns of the parties hereto. Harrington died testate on February 27, 1932. In the estate tax return *175 100 shares of Bank stock were reported at $100 per share, the fair market value as of that date. In this return debts of decedent included this computation: Republic Steel guarantee on stock
purchase
$106,000
Less fair value of stock of Union
National Bank at $100
50,000
$ 56,000 This amount was allowed as a liability of the estate. The fair market value of Union National Bank stock as of the date of death of Harrington was $100 per share. On December 28, 1932, the executors of decedent's estate paid to Republic the sum of $31,000 and on March 29, 1937, it paid the additional sum of $75,000. This was in full settlement of the agreement of December 29, 1931. The payments were on the agreed basis of $200 per share plus $6,000 for accrued interest. Republic, on April 2, 1937 delivered to the executors and their appointee a total of 500 shares of the capital stock of Union National Bank. The executors did not charge themselves with the stock until actually delivered to them. The stock was then entered in their asset account at $100 per share, the prevailing market price at that time. At the time of decedent's death, he owed unpaid charitable subscriptions in the following *176 amounts: Youngstown Hospital Association
$32,300.00
Community Corporation
5,000.00
College of Wooster
4,999.99
$42,299.00
The charitable pledges were listed as debts and allowed as deductions in determining the net estate subject to the Federal estate tax. The minutes of the executive committee of the Community Corporation for October 18, 1938, show inter alia: The Secretary read the following letter from the executors of the estate of John T. Harrington: "Gentlemen: - We understand that there is a balance still remaining due of $5000 upon the pledge of the late John T. Harrington to your Corporation for the fiscal year July 1, 1931 to July 1, 1932, the same being for the fourth quarter of that year. This is to advise you that we will deliver, or cause to be delivered, to The Community Corporation 25 shares of the Capital stock of The Union National Bank of Youngstown, on the basis of $200 per share, in full liquidation and settlement of the claim of your Corporation against the Estate of John T. Harrington for the $5000 still remaining due upon Mr. Harrington's pledge to your Corporation for the fiscal year July 1, 1931 to July 1, 1932. If this offer is acceptable *177 to you, will you please advise us in writing at your earliest convenience. Charles F. Smith Donald J. Lynn - Executors." On motion of Herman C. Ritter, seconded by Tom H. Murray, and carried, the Executive Committee accepted this offer of settlement and authorized the Secretary to communicate this favorable action to the executors of The Estate of John T. Harrington. On October 29, 1938, 25 shares of Bank stock were delivered to the Community Corporation in full settlement of the unpaid pledge of $5,000. These 25 shares were delivered out of 100 shares purchased by Harrington during his lifetime and returned as part of his estate. On October 20, 1938, the Bank stock was quoted on the Youngstown Exchange as "bid, $100, asked $110, last sale $110." The fair market value of the stock was $110 per share on October 20, 1938. On December 20, 1938, 162 shares of Bank stock were transferred to the Youngstown Hospital Association in full settlement of decedent's unpaid pledge of $32,300. These shares were delivered out of the 500 shares which the executors had acquired from Republic. The Bank stock was quoted on the Youngstown Exchange on December 19 and 21, 1938, as "bid 110, asked 120, *178 last sale 110." The fair market value as of December 20, 1938, was $110 per share. On December 24, 1938, 25 shares of the Bank stock were transferred to College of Wooster in full settlement of decedent's unpaid pledge of $4,999.99. These 25 shares were delivered out of the 500 shares acquired by the executors from Republic. The Bank stock was quoted on the Youngstown Exchange as "bid 110, asked 120, last sale 110," on December 24, 1938. The fair market value was $110 per share as of that date. The College entered the stock upon its books at the value of $3,000, and the remainder of the pledge was cancelled. On or about February 2, 1939, the executors filed an account in Probate Court in which they reported "property sold or transferred by the Executors resulting in profit or increase to estate" and included the following computation: No. of
Sale
Inventory
Shares
Description of Pledges
Price
Value
Profit
25
Union National Bank Capital Stock at $200.00
$ 5,000.00
$ 2,500.00
$ 2,500.00
Community Corporation of Youngstown, Ohio
162
Union National Bank Capital Stock at $200.00
32,300.16
16,200.00
16,100.00
Youngstown Hospital Association
25
Union National Bank Capital Stock at $200.00
4,999.99
2,500.00
2,499.99
College of Wooster
*179 This account was considered and approved by the Probate Court. The book value of the Bank stock was approximately $250 per share at the beginning and end of 1938. In the original income tax return the executors reported the sum of $21,099.99 as capital gain representing the difference between a basis of $21,200 for the 212 shares of capital stock of Union Nationalbank and the unpaid liability to the three charitable institutions. Fifty percent was reported in gross income as long term capital gain. As amended return and claim for refund of an alleged overpayment were filed on June 9, 1939. The petitioner claimed a deduction for the sum of $21,099.99 for charitable contributions. All facts stipulated but not expressly found are incorporated herein by reference. Opinion The sole issue of this proceeding is whether or not petitioner received either capital gain or ordinary income by the transfer of stock in satisfaction of debts owed to charities. These debts were included and allowed as liabilities in the estate tax return. The facts show that petitioner discharged a debt of $5,000 owing to the Community Corporation with 25 shares of Bank stock. These shares were owned by decedent *180 at the time of his death and their fair market value as of the date of his death was $100 each. Petitioner acquired 500 more shares of this stock by performing a binding contract which decedent had made for its purchase at $200 a share. One hundred sixty-two shares of this subsequently acquired stock were turned over to the Youngstown Hospital Association in satisfaction of decedent's pledge of $32,300. Twenty-five shares of this latter stock were turned over to the College of Wooster in satisfaction of decedent's pledge of $4,999.99. The first question which we must determine is the basis which the Bank stock had in the hands of petitioner. There is no doubt that the stock which decedent owned prior to his death and which had a fair market value of $100 at the date of his death had a basis of $100 per share in the hands of petitioner. Petitioner concedes as much. The controversy involves the basis of the stock received by petitioner from Republic. Petitioner contends that this stock was purchased by it and, therefore, in accordance with section 113 (a) of the Revenue Act of 1938, the basis was the cost of $200 per share. Respondent, conversely, contends that the facts of the instant *181 case bring it within the purview of section 113 (a) (5) of the Revenue Act of 1938, such being an exception to the general rule pronounced by section 113 (a). We quote the pertinent portions of both sections: SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS. (a) Basis (Unadjusted) of Property. - The basis of property shall be the cost of such property; except that - * * * * *
(5) Property Transmitted at Death. - If the property was acquired by bequest, devise, or inheritance, or by the decedent's estate from the decedent, the basis shall be the fair market value of such property at the time of such acquisition. * * * Obviously, this stock was not acquired through bequest, devise or inheritance, since petitioner was neither legatee nor heir of Harrington. Respondent's contention can be sustained, if at all, only on the theory that this stock was acquired from decedent. On this point respondent's contention must fall. At the date of decedent's death he was merely a party to an agreement which incorporated within its terms an executory contract to sell this stock. Reference to the agreement discloses the unequivocal intention that no sale take place upon its execution but *182 that, on the contrary, the sale transpire at a future time. We quote from the agreement, "Said Harrington hereby covenants and agrees that he will * * * purchase from Republic * * *." (Emphasis supplied). Sale was contingent upon Harrington's payment of the agreed price. At the time of his death this payment had not been made. Accordingly, title then remained in Republic. Republic alone had the right to vote the stock, receive dividends thereon and otherwise act in its connection. Cf. Crocker v. Helvering, 76 Fed. (2d) 974. Petitioner correctly treated the purchase contract as an estate liability in the net sum of $56,000, being the purchase price less the fair value of the stock to be received therefor. Consistently, this stock was not inventoried as an asset of the estate. Petitioner acquired the stock directly from Republic some five years after Harrington's death and its acquisition came as a result solely of the liquidation of the state's liability to Republic. The facts clearly establish the inapplicability of section 113 (a) (5). That section as construed by article 113 (a) (5)-1 (b) of Regulations 101 to relate contingent titles back to *183 the death of decedent does not embrace contingent or other kinds of titles to or interest in property which the decedent did not own at his death and consequently were not transferred by his death. Interests in property which do not have their incipience in the death of a decedent are not covered by section 113 (a) (5) or the construction thereof by the above cited articles of the Regulations. The petitioner here acquired no title or interest of any character to or in the Bank stock in question at or by reason of the death of the decedent. It acquired the full title to the stock by paying the full purchase price therefor. The title so acquired is not to be related back to the death of decedent. The cases of Estate of Robert L. Holt, 14 B.T.A. 564, Rose Newman, et al., Executors, 31 B.T.A. 772, Crocker v. Helvering, supra, and Schoenfeld v. Commissioner, 103 Fed. (2d) 964, upon which respondent also relies, are not in point. In each the principal question involved the valuation of securities for estate tax purposes. No question was raised with reference to *184 the basis for exchange or the includability of such securities in the estate assets. Since petitioner paid $100,000 principal for 500 shares of the stock the basis thereof to petitioner for gain or loss is $200 per share. Petitioner discharged its obligation of $32,300 to Youngstown Hospital Association by delivering to it 162 shares of the stock acquired from Republic. It settled its obligation of $4,999.99 to the College of Wooster by delivering to it 25 shares of the stock acquired from Republic. Since the stock so delivered to the two institutions named had a cost basis for gain or loss of $200 per share petitioner realized no gain in either of such transactions. Petitioner discharged its obligation of $5,000 to Community Corporation by delivering to it 25 shares of Bank stock which decedent owned at his death. This stock had a fair market value of $100 per share at the death of decedent which was its basis in the hands of petitioner for gain or loss. Consequently, in the transaction with Community Corporation, petitioner realized a capital gain of $2,500. Decision will be entered under Rule 50.