ESTATE OF SELIG ALLEN GROSSINGER, DECEASED, JOSEPH G. BLUM, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Grossinger v. Commissioner
Docket No. 7422-76.
United States Tax Court
T.C. Memo 1982-393; 1982 Tax Ct. Memo LEXIS 351; 44 T.C.M. (CCH) 443; T.C.M. (RIA) 82393; July 14, 1982. Maurice H. Greenberg and Roy F. Hutton, for the petitioner. David M. Brandes, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge:* Respondent determined a deficiency of $70,996.15 in the Federal estate tax of the Estate of Selig Allen Grossinger. After concessions and stipulations by the parties, the primary question is whether a mortgage note receivable which is concededly includible in decedent's gross estate should be included at its agreed value of $350,858.00 or whether said note receivable should be included at a reduced amount on the ground that decedent *353 made a completed gift in his lifetime of a portion of his interest in the note in the form of an annuity payable to decedent's mother for her life. As a secondary question, we must additionally consider the amount of any unpaid gift tax liability generated by such transactions for purposes of determining the estate's allowable deduction for estate tax purposes of gift taxes, additions and interest due. FINDINGS OF FACT The case was submitted on a fully stipulated basis. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference, and the facts deemed relevant are found as follows: Petitioner is the Estate of Selig Allen Grossinger. Petitioner's executors filed a Federal estate tax return for petitioner on June 29, 1973, with the Manhattan, New York district office of the Internal Revenue Service and payment was made therewith of estate tax in the sum of $64,736.00. At the time of his death on September 30, 1972, Selig Allen Grossinger ("decedent" herein) *354 was a legal resident of Yonkers, New York. Decedent's paternal grandfather, Selig Grossinger, originally owned 50 percent of the outstanding capital stock of two New York corporations, namely: S & H Grossinger's, Inc. ("Grossinger's" herein) and the Grossinger Realty Corporation ("Realty" herein). The remaining 50 percent of the outstanding stock in these corporations was owned by Selig Grossinger's nephew, Harry Grossinger, Sr. From the outset in 1914 to the time of trial, Grossinger's has continuously been angaged in the business of operating a resort hotel, while Realty, the other corporate entity, has at all times relevant herein owned the real property upon which the Grossinger's resort business was conducted. Prior to the death of Selig Grossinger, the operations of Grossinger's were managed by Selig and his nephew, Harry Grossinger, Sr. Selig Grossinger died on December 7, 1931, survived by his wife, Malke, his two daughters, Lottie and Jennie, and his son, Harry, Jr. Harry, Jr. was decedent's father and was so-called in order to distinguish him from his cousin, Harry Grossinger, Sr., who had by this time become Harry, Jr.'s brother-in-law by virtue of Harry, Sr.'s *355 marriage to Jennie Grossinger. Harry, Jr. was married to Freda Grossinger (hereinafter "Freda") and subsequent to Selig Grossinger's death, Harry, Jr. and Freda had two children, decedent and Mary Ann Klein.Harry, Jr. was born on May 1, 1901, and Freda was born on June 6, 1906. Decedent was born on January 30, 1933, and Mary Ann Klein was born on December 10, 1937. Pursuant to the provisions of Article SECOND of the last will and testament of Selig Grossinger, a testamentary trust was established and Selig Grossinger's 50 percent stock interest in Grossinger's and Realty was distributed to one Jacob Grumet as trustee of said trust. Article SECOND provided for the payment of the net income of this trust to Selig Grossinger's widow, Malke, during her lifetime. Upon her death, 25 percent of the then trust corpus was to be distributed outright to Selig Grossinger's daughter, Lottie, and the remaining 75 percent of the trust corpus was to remain in trust with the net income thereof to be paid to Selig's son, Harry, Jr. during his lifetime. Upon Harry Jr.'s death, the trust was to terminate and the then remaining corpus was to be distributed to the then living issue of Harry, Jr. in *356 equal shares, per stirpes. Selig Grossinger's will expressed the testator's desire that the trustee appointed under such will hold the stock of Realty and Grossinger's as a permanent investment, but vested in said trustee sole discretion to sell the stock. This will made no provision for Harry, Jr.'s wife, Freda. Malke Grossinger, the primary income beneficiary under the testamentary trust created pursuant to Selig Grossinger's will, died on August 16, 1952. Thereafter, pursuant to provisions of Article SECOND of Selig Grossinger's will as set out above, 25 percent of the trust corpus was distributed to the testator's daughter, Lottie. That distribution consisted of 12-1/2 percent of the outstanding capital stock in Grossinger's and Realty. The remaining 37-1/2 percent of those shares were retained in trust for the continuing benefit of Harry, Jr. as secondary income beneficiary. During the period commencing with Selig Grossinger's death and ending on August 27, 1963, no dividends were paid in respect of the outstanding stock of either Realty or Grossinger's. Early in 1962 a shareholder's derivative action was commenced against Harry, Sr., his wife, their children, and *357 Grossinger's. Jacob Grumet, as trustee under Selig Grossinger's testamentary trust, entered the action as a shareholder - plaintiff on June 13, 1962. The plaintiffs sought, among other relief, a judgment directing the payment of dividends by Grossinger's. In an attempt to settle the above controversy, the corporate defendant offered to purchase all of the shares of stock held by the plaintiffs in Grossinger's and Realty. In considering this purchase offer, Jacob Grumet, as trustee, consulted with Harry, Jr., Mary Ann Klein and decedent. Harry, Jr. and his two children determined that the trustee's acceptance of the purchase offer would be in the best interest of all concerned, including Freda. As a separate matter, they also determined that there should be an agreement on the part of decedent and Mary Ann Klein to provide for Freda's support after Harry, Jr.'s death, if Freda should survive him. Pursuant to the above determinations and in anticipation of the sale of the shares of Grossinger's and Realty, on August 27, 1963, Harry, Jr., Freda Grossinger, Mary Ann Klein and decedent entered into an agreement which provided in pertinent part: * * * It is hereby mutually agreed *358 that in the event of the death of Harry, Jr. prior to the death of [Freda], Mary Ann and [decedent] shall pay to [Freda] from the proceeds of their inheritance under the will of Selig Grossinger, deceased, the sum of Twenty-Five Thousand ($25,000) Dollars per year for her lifetime. Such payment of Twenty-Five Thousand ($25,000) Dollars a year shall be paid from the first proceeds of any amounts received in each year by Mary Ann and [decedent] from distributions received from the Estate of Selig Grossinger, Deceased. Mary Ann and [decedent] may in their discretion at any time purchase an annuity contract to provide for the payment to [Freda] of the said sum of Twenty-Five Thousand ($25,000) Dollars. Neither decedent nor any other person at his request received any money or money's worth in consideration for decedent's entering into the above agreement. The plaintiffs in the action against Realty and Grossinger's ultimately sold all of their shares to Grossinger's and Realty, and the litigation was therefore discontinued. Jacob Grumet, as trustee of the testamentary trust under Article SECOND of Selig Grossinger's will, received as part of the proceeds of the sale, *359 a mortgage note receivable in the face amount of $1,345,000. On April 9, 1965, Harry, Jr. died and was survived by his wife, Freda, and his two children, Mary Ann Klein and decedent. On April 8, 1965, the day just prior to and in anticipation of the death of his father, decedent, as settlor, entered into a trust agreement with Mary Ann Klein, Joseph G. Blum and Nathan Goldwasser, as trustees. Paragraph 1. of this trust agreement provided in pertinent part: 1. The Settlor does hereby transfer and deliver to the Trustees, in trust, the sum of One Thousand ($1,000) Dollars, the receipt of which is hereby acknowledged by the Trustees, and does hereby assign, transafer and set over unto the Trustees all of the right, title and interest of the Settlor in and to all property, interest and rights to which the Settlor now is or may at any time hereafter be entitled, absolutely and contingently, under the Last Will and Testament of Selig Grossinger, Deceased, grandfather of the Settlor, including, without limitation, the right, title and interest of the Settlor in and to any part of the principal of the trusts created under Articles SECOND and FOURTH of said Last Will and Testament of *360 Selig Grossinger, deceased, upon the death of Harry Grossinger * * *. Paragraph 2. of the trust agreement provided: 2. The Trustees do hereby agree that until the termination of the trust created herein all property held by them hereunder and income therefrom shall be held in trust for the uses and purposes and upon the terms and conditions set forth herein. Subparagraph a. of paragraph 3. of the trust agreement directed the trustees to pay to, or apply for the benefit of the settlor, the net income of the trust quarter-annually or at more frequent intervals during the term of the trust. Subparagraph b. of paragraph 3. of this agreement provided: b. The Trustees are authorized at any time and from time to time during the term of this trust to pay to, or apply for the use and benefit of, the Settlor such part of the principal of the trust as the Trustees shall, in their absolute discretion, deem necessary or advisable for the best interest of the Settlor, and the judgment of the Trustees as to the amounts of such distributions and the advisability thereof shall be binding and conclusive upon all persons who might then or thereafter have any claim or interest in the trust *361 property. Paragraph 4. of this trust agreement provided in pertinent part: 4. The Settlor hereby directs the Trustees to recognize (a) the indebtedness and obligation of the Settlor to Freda Grossinger, mother of the Settlor, pursuant to a certain agreement made on August 27, 1963 between Harry Grossinger, Freda Grossinger, Mary Ann Klein and the Settlor * * *. The Trustees are hereby authorized and directed to discharge the indebtedness and obligations of the Settlor as aforesaid from time to time from the assets of the trust established under this agreement. This trust, by its terms, was irrevocable. Additionally, pursuant to the specific provisions of the trust agreement, the trust was to terminate upon the death of the settlor, and upon such termination, the principal of the trust and all accrued income was to be disposed of and distributed as part of the estate of the settlor (decedent). On November 3, 1965, decedent executed a document described as an "assignment." This document confirmed the assignment of assets previously made by decedent to the April 8, 1965 trust. It specifically stated that * * * except for such [April 8, 1965] assignment, [decedent] *362 has not heretofore at any time assigned, transferred or otherwise encumbered his right, title and interest in and to any of the aforesaid property, interest and rights. [viz., his remainder interest in his grandfather's estate]. On November 10, 1965, Jacob Grumet, as trustee of the terminated trust under Selig Grossinger's will, assigned the respective interests in the mortgage note payable by Grossinger's and Realty to Mary Ann Klein, individually, and to the trustees of the April 8, 1965 trust. In December of 1965, an instrument entitled "Authorization" was executed by Mary Ann Klein, individually, by decedent as settlor of the April 8, 1965 trust, and by the trustees of said trust. This document authorized Grossinger's and Realty to make all mortgage payments due and owing to Mary Ann Klein, individually, and to the trustees of the April 8, 1965 trust, to the order of Joseph G. Blum's law firm. As noted above, Joseph G. Blum was also a trustee under the April 8, 1965 trust. During the period following the sale of the stock in Grossinger's and Realty to the time of trial of this case, all payments of interest and principal were promptly made and there was no default *363 with regard to any quarterly payment. Subsequent to the death of Harry, Jr. on April 9, 1965 and prior to decedent's death on September 30, 1972, the quarterly payments due on May, August, November and February, in the amount of $27,518.39, were transmitted by Realty and Grossinger's to Joseph G. Blum's law firm pursuant to the above-described "Authorization", and were then paid over as follows: TO
AMOUNT
Mary Ann Klein
$10,634.19
Trustees under April 8, 1965 trust
10,634.19
Freda Grossinger
6,250.00
Total Quarterly Payments
$27,518.38
Decedent herein died testate on September 30, 1972. The April 8, 1965 trust was in existence at the date of decedent's death, but terminated on that date. The assets of said trust became part of decedent's estate, and were reported by decedent's executors in the Federal estate tax return. Paragraph SEVENTH of decedent's last will and testament specifically directed his executors and testamentary trustees to recognize his indebtedness and obligation to his mother, Freda Grossinger, pursuant to the August 27, 1963, agreement between him, his father and his sister. Additionally, said paragraph SEVENTH directed the Estate to *364 discharge any obligation owing by him under said agreement from the assets of his estate or any trust established under his will. Following decedent's death, the payments on the Realty and Grossinger's mortgage note receivable continued to be made as set out hereinabove except that payments which were previously transmitted to the April 8, 1965 trust were paid to the executors of decedent's estate. Joseph G. Blum, a trustee of the April 8, 1965 trust, is also an executor of decedent's estate. The Federal estate tax return filed for decedent's estate reported the Realty and Grossinger's mortgage note receivable on Schedule C. Although the face value of the portion of the mortgage note receivable which was held by the trustees under the April 8, 1965 trust was $463,465.00 on the date of decedent's death, the parties are in agreement, and have so stipulated, that the fair market value of said portion of the mortgage note receivable was $350,858.00 on that date. However, the value of the note as reported on Schedule C was reduced by $112,940.00 to reflect the "Freda Grossinger - associated debt under agreement dated August 1963 for payment of $12,500 per annum - actuarily [sic] *365 computed." Respondent, in his statutory notice of deficiency, disallowed the reduction in value of the mortgage note receivable in the amount of $112,940.00 on the ground that petitioner's "debt" to Freda Grossinger did not represent a valid claim against the estate since such "debt" was unsupported by consideration. In its original petition to this Court, petitioner maintained that the value of the alleged annuity created by decedent for the life of his mother was not to be viewed as a debt deductible from the gross estate. Rather, petitioner contended that the date of death value of said annuity should be excluded on the ground that the annuity was a property interest which decedent had transferred to his mother by gift during his life and therefore did not "* * * 'belong', in any legal sense, to the estate." No other issue which remains to be decided was raised by the original petition. [1]
In his answer, respondent generally denied *366 all of the relevant allegations contained in the petition and asserted that the deficiency as originally determined should in all respects be approved. In their stipulations of fact, the parties have agreed that in computing the ultimate estate tax liability of decedent's estate, a deduction should be allowed for any unpaid gift tax liability which was generated by decedent's transfer of an annuity to his mother. The parties also have stipulated that the estate is entitled to deduct any interest which accrued on said gift tax liability to the date of decedent's death, as well as any addition for late payment thereof. Moreover, the parties have agreed that the estate is entitled to deduct reasonable attorney's fees and other necessary and proper expenses incurred by the estate in connection with this proceeding. Decedent filed no Federal gift tax return during his lifetime, and his entire $30,000 specific exemption under section 2521 [2] remains unused and available. Although petitioner's original petition to this Court did not raise the above-mentioned estate *367 tax deductions as issues in this case, at trial petitioner moved the Court to amend his pleadings to include these issues and so as to conform the pleadings to the proof. Additionally, petitioner moved to amend his pleadings to claim an overpayment of Federal estate taxes which might result from the disposition of other issues by this Court. Respondent did not object to these amendments. ULTIMATE FINDINGS OF FACT On April 8, 1965, decedent made a valid completed gift in trust of an annuity for the benefit of his mother in the amount of $12,500 per year, such annuity to run for a period measured by the shorter of the lives of decedent and his mother. Since the April 8, 1965 trust terminated upon the death of decedent, the full value of the assets in the trust was includible in his gross estate for Federal estate tax purposes and was not burdened with any continuing obligation to pay an annuity to decedent's mother. Since the April 8, 1965 transfer to trust constitutes a completed gift for Federal tax purposes, and further since decedent did not file a Federal gift tax return in respect of such gift, the unpaid gift tax, addition (if any) and interest to the date of decedent's *368 death represent valid claims against decedent's estate. The value of said gift was not reduced by the antecedent life estate of decedent's father in the assets from which such annuity was to be paid, such life estate having no ascertainable value on April 8, 1965; nor, under the facts of this case, did such antecedent life estate convert decedent's gift to his mother to a future interest. OPINION Petitioner contends that respondent erroneously included in decedent's gross estate the fair market value of an annuity payable to Freda Grossinger for her life. Petitioner maintains that, to the extent that the proceeds of the Grossinger's and Realty mortgage note receivable must be used to satisfy Freda's "right" to annuity payments, decedent cannot be considered to have beneficially owned the mortgage note on the date of his death, and the date of death value of the annuity should therefore be excluded from his gross estate. Petitioner's primary contention in this regard is that decedent partially divested himself of beneficial ownership in the subject property by means of a completed lifetime gift of an annuity payable to his mother for her life. According to petitioner, this *369 completed lifetime gift was accomplished by virtue of the August 27, 1963 agreement, since said agreement purportedly constituted an irrevocable declaration of trust for the benefit of decedent's mother and therefore operated, under New York law, [3] to irrevocably transfer, in praesenti, beneficial ownership in a part of decedent's remainder interest under his grandfather's will to his mother at that time. Respondent argues that the agreement of August 27, 1963, did not amount to a valid declaration of trust under New York law and therefore did not operate to divest decedent of beneficial ownership in the property at that time. Respondent further argues that no present gift can be considered to have been made on August 27, 1963 on the theory that the agreement of that date constituted an enforceable promise to make future payments. In support of this contention, respondent maintains that the agreement of August 27, 1963, was not an enforceable contract *370 under New York law because it lacked adequate consideration. Alternatively, respondent argues that even if the August 27, 1963 agreement was a valid contract under New York law, it did not become enforceable until decedent's father, Harry, Jr., died in 1965, and therefore no complete gift was made for Federal tax purposes until that time. Respondent maintains that although no completed gift resulted by virtue of the August 27, 1963 agreement, the transfer to the trust on April 8, 1965 did constitute a present gift of an annuity to decedent's mother. However, since this trust was to terminate on the death of the settlor (decedent herein), respondent maintains that the gift thereby created was a gift of an annuity to decedent's mother only for the shorter of decedent's or his mother's life, and therefore did not operate to remove the date of death value of the annuity from decedent's gross estate. As a corollary to this contention, respondent argues that for purposes of determining the estate's deduction for gift taxes due, the value of the gift on April 8, 1965 should be computed without regard to Harry, Jr.'s life expectancy since the trust of that date was created in anticipation *371 of Harry, Jr.'s death. Section 2033 provides: The value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death. The interest of a decedent which section 2033 renders subject to Federal estate tax liability is, of course, a beneficial interest. See section 20.2033-1(a), Estate Tax Regs. Thus, if a decedent held property only as a trustee or in some other fiduciary capacity, the property would not be includible in his gross estate solely by virtue of section 2033. See e.g., Estate of Holt v. Commissioner,14 B.T.A. 564 (1928). It is well settled that in the application of a Federal revenue act, state law controls in determining the ownership of property or rights thereto; Federal law, in turn, controls how much rights shall be taxed. Morgan v. Commissioner,309 U.S. 78 (1940); United States v. Mitchell,403 U.S. 190 (1971). I We therefore initially consider petitioner's contention that the agreement of August 27, 1963, among the decedent, his mother, his sister and his father, which is set out in pertinent part in the Findings of Fact, *372 amounted to a valid declaration of trust under New York law and thereby operated to divest decedent of beneficial ownership in a portion of his interest in the subject property. It is true that, under New York law, the owner of property can transfer beneficial ownership in the property to another by a declaration of trust. In re Estate of Fontanella,33 App. Div. 2d 29, 304 N.Y.S. 2d 829 (1969). It is equally true that no actual transfer of property is necessary for the creation of such a trust. Payne v. Connelly,32 App. Div. 2d 693, 299 N.Y.S. 2d 1013 (1969). However, to effect a valid transfer of beneficial ownership by declaration of trust, the purported settlor must clearly express, by words or acts, an unequivocal intention to relinquish his beneficial ownership in the subject property in praesenti, and to hold it henceforth for the benefit of another. See In Re Leverich's Will,135 Misc. 774, 238 N.Y.S. 533 (Surr. Ct. Kings Co. 1929), affd. 234 App. Div. 625, 251 N.Y.S. 870 (1931), and the cases cited therein. A mere gratuitous promise to transfer property at some time in the future does not result in the *373 creation of a trust by declaration. Central Trust Co. of New York v. Gaffney,157 App. Div. 501, 142 N.Y.S. 902 (1913), affd. mem., 215 N.Y. 740, 109 N.E. 1069 (1915); Farmers' Loan and Trust Co. v. Winthrop,238 N.Y. 477, 144 N.E. 686 (1924). In such a case, both legal and beneficial ownership remain in the promisor until an actual transfer is effected. In light of the above, we must conclude that decedent did not divest himself of beneficial ownership in the subject property by virtue of the August 27, 1963 agreement, since said agreement did not amount to a declaration of trust under New York law.No provision in the agreement indicates that decedent intended to vest beneficial ownership to a portion of his remainder interest under his grandfather's will in his mother at that time. On the contrary, the entire agreement is characterized by words of futurity. Under the agreement decedent promised that, in the event that his father predeceased his mother, decedent "shall pay" his mother $12,500 per year for her lifetime out of the proceeds of his inheritance. [4] Thus only upon the happening of a future event, i.e., the death of his *374 father, would decedent's "obligation" to make payments crystalize. There was no present assignment of the decedent's remainder interest by the specific terms of the August 27, 1963 agreement and this "* * * absence of words of present assignment is emphasized when we consider with what simplicity an assignment could have been stated * * *." See Farmers' Loan & Trust Co. v. Winthrop,supra at 483. If decedent had intended to hold a portion of his remainder interest in trust for his mother, he would have employed clearer language in the August 27, 1963 agreement. This holding is fortified by decedent's actions with respect to his inheritance after August 27, 1963. On April 8, 1965, the *375 day just prior to, and in anticipation of, the death of decedent's father, decedent transferred all of his interest in and rights to his inheritance under his grandfather's will to a newly created inter vivos trust. The trust instrument specifically directed the trustees under that trust to recognize decedent's "indebtedness" to his mother pursuant to the August 27, 1963, agreement and to discharge that indebtedness from the assets of the newly created trust. Again, in a document executed on November 3, 1965, and described as a "confirmation" of the assignment of assets previously made by decedent to the trust created by him on April 8, 1965 (a joint exhibit herein), decedent represented that, * * * except for [the April 8, 1965 transfer to trust, decedent], has not heretofore at any time assigned, transferred or otherwise encumbered his right, title and interest in and to any of the aforesaid property, interest and rights. [viz., his remainder interest in his grandfather's estate.] Such a statement by decedent cannot be reconciled with petitioner's position that decedent intended to make a completed transfer of an annuity interest in such assets by declaration of *376 trust on August 27, 1963. Absent the necessary intent to transfer in praesenti, no trust by declaration arose. In Re Leverich's Will,supra.
Moreover, paragraph SEVENTH of decedent's last will and testament directed his executors and trustees to recognize his "indebtedness" to his mother under the August 27, 1963 agreement and further directed the estate to discharge said obligation from the assets of his estate or any trust established under his will. These actions are inconsistent with petitioner's contention that decedent intended to totally relinquish dominion and control over a portion of his remainder interest in 1963. If decedent had so intended, he would have had no reason to include the above provisions in his will since the purported annuity would have passed to his mother outside of his estate by virtue of the August 27, 1963 "trust". We must therefore reject petitioner's contention that subsequent events were totally consistent with decedent's intention to create an irrevocable trust for the benefit of his mother in 1963. In fact, decedent treated his legacy from his grandfather's will as his property, both legally and beneficially, which *377 he was free to transfer during his life and dispose of by his own will. In support of his contention that the August 27, 1963 agreement constituted a valid declaration of trust, petitioner cites Estate of Holt v. Commissioner,supra. That case is, however, clearly distinguishable from the present factual situation. In Holt the decedent-settlor set aside certain bonds for his sister's benefit. He repeatedly wrote her that the bonds were her property and not his own, marked them as hers and signed a memorandum to that effect. Additionally, the decedent-settlor suggested that his sister take the bonds and when she declined he continued to hold them for her benefit and remitted all current income to her and made an annual accounting to her. It was thus clear in Holt that the decedent-settlor manifested clearly and unequivocally by his words and acts an intention to hold the bonds as trustee for the present benefit of his sister. As stated above, no such clear intention was manifested by decedent herein in 1963.
Having concluded that the August 27, 1963 agreement did not, under New York law, amount to a valid declaration of trust, we must next determine *378 whether a present gift of an annuity of $12,500 for the life of Freda Grossinger can be considered to have been made on August 27, 1963 on the ground that said agreement constituted an enforceable contract on that date. [5]
Respondent concedes on brief that under certain circumstances a binding contractual promise to make future payments may be considered a completed gift for Federal tax purposes when the promise becomes enforceable under state law. See, e.g., Estate of Copley v. Commissioner,15 T.C. 17 (1950), affd., 194 F.2d 364 (7th Cir. 1952); Harris v. Commissioner,178 F.2d 861 (2d Cir. 1949), revd. on other grounds, 340 U.S. 106 (1950). See also Rev. Rul. 69-347, 1969-1 C.B. 227. Such a situation may arise since consideration to render a contract enforceable under state law need not necessarily have a value equal to the property being transferred, nor indeed, need the consideration be capable of being measured in money. Stated generally, the theory upon which *379 the above-cited cases rest is that an enforceable right to receive future payments is itself a valuable property right and when such a right is created in another person, a completed gift may have been made to the extent that the property right was transferred for less than full consideration for Federal gift tax purposes. These principles are, however, inapplicable to the facts of the present case. The parties have stipulated that decedent received no money or money's worth in exchange for entering into the agreement of August 27, 1963. Nor does the record indicate that the agreement was supported by any other form of consideration sufficient to render it enforceable under New York law. Petitioner effectively concedes as much in his reply brief where he states that the agreement * * * constituted a unilateral act of bounty and as such, it required no consideration to pass from the donor or from any other person. Moreover, the record clearly indicates that decedent was motivated to enter into the agreement exclusively by filial affection; and a mere moral obligation does not, in and of itself, constitute consideration adequate to render a contract enforceable in New *380 York. Pershall v. Elliott,249 N.Y. 183, 163 N.E. 554 (1928). At best, the 1963 "agreement" represented merely an unenforceable promise to make a gift in the future, contingent on the happening of an event (viz., Freda outliving Harry, Jr.) which might not occur, and therefore did not constitute a completed transfer for Federal tax purposes. II We next consider whether the trust agreement of April 8, 1965, operated in any way to create an annuity interest in Freda, the value of which would be excludible from decedent's gross estate. Pursuant to the trust agreement of April 8, 1965, decedent transferred to Jacob Blum, Nathan Goldwasser and Mary Ann Klein, as trustees, the sum of $1,000 together with * * * alloftheright,titleandinterest of [decedent] in and to all property, interest and right to which [decedent] now is or may at any time hereafter be entitled, absolutely and contingently, under the Last Will and Testament of Selig Grossinger, Deceased, grandfather of the Settlor, including, without limitation, the right, title and interest of the Settlor in and to any part of the principal of the trust created under *381 Article Second and Fourth of said Last Will and Testament of Selig Grossinger, Deceased, upon the death of Harry Grossinger, * * *. [emphasis added] Under the specific terms of the trust agreement, the trustees agreed to discharge the indebtedness and obligation of decedent to his mother, Freda Grossinger, pursuant to the August 27, 1963 agreement fromtheassetsofthetrust,untiltheterminationofthetrust. The trust was irrevocable and, by its terms, was to terminate upon the death of decedent. Upon such termination, the trust instrument provided that the principal of the trust, together with all accrued income, should bedisposedofanddistributedaspartoftheestateofthesettlor. The trust instrument also directed the trustees to pay to, or apply for the use and benefit of the settlor, the net income of the trust, quarterly or at more frequent intervals during the term of the trust. Additionally, the trustees were authorized to distribute any part of the trust principal to the settlor as the trustees, in their absolute discretion, should deem necessary or advisable *382 for the best interest of the settlor. Decedent's last will and testament specifically directed his Executors and Trustees to discharge his obligation to Freda Grossinger under the August 27, 1963 agreement fromtheassetsofhisestateoranytrustestablishedunderhiswill.
Petitioner does not contend that the April 8, 1965 trust agreement operated, in and of itself, to remove the date of death value of the annuity from decedent's gross estate. Petitioner does contend that the April 8, 1965 trust, although valid, was merely confirmatory of the alleged transfer in trust in 1963, and did nothing with respect to Freda's annuity different from what was done in 1963. However, since, as we have previously held, the 1963 agreement represented nothing more than an unenforceable promise to make a future gift, Freda at no time acquired rights in the mortgage note receivable from that document. Moreover, although the April 8, 1965 trust instrument directed the trustees to discharge decedent's "obligation" to his mother pursuant to the 1963 agreement, and although that agreement provided for payments to Freda for her life, such payments *383 could be made under the 1965 trust only for so long as the trust remained in existence. The trust by its terms was to terminate upon the death of the settlor and the accrued income and principal was to then fall into decedent's estate unencumbered by the terminated trust. It is therefore manifestly clear that decedent's transfer to the April 8, 1965 trust limited his mother's interest in the trust property to the period commencing with the April 8, 1965 transfer, and ending with his death. Upon his death, the entire trust corpus fell into his probate estate to be distributed pursuant to the terms of his will. We therefore hold that respondent did not err in including the Realty and Grossinger's mortgage note receivable in decedent's gross estate at its full agreed value unencumbered by any annuity. III The next issue for decision, as raised by petitioner in his amended pleadings, [6] is the amount of [7] the deduction under section 2053(a)(3) [8] to which the estate is entitled on account of decedent's unpaid Federal gift tax liability, plus additions and interest thereon, which existed at the time of decedent's death. A resolution of this issue, of course, requires us to inquire *384 into the value of any gifts made by decedent during his lifetime since only after such inquiry can we determine the amount of decedent's unpaid gift tax liability. However, since respondent has made no determination of any gift tax liability with respect to decedent or his estate (so far as this record shows), it must be emphasized that we are resolving such liability only in the context of redetermining petitioner's Federal estate tax liability. Since petitioner has effectively conceded, in amending its pleadings to raise the gift tax deduction issue, and in entering into stipulations relative thereto, that a transfer of an annuity by decedent to his mother during his lifetime did generate gift tax liability, our consideration of this issue for the limited purpose noted above is clearly within the bounds of our jurisdictional limits. Cf. Fidelity Trust Co. v. Commissioner,4 B.T.A. 411, 423 (1926). [9] The issue being properly before us, we therefore address it. *385 Throughout this case, both in pleading and on brief, petitioner has consistently maintained that the operative and controlling event in this case was the execution by decedent of the August 27, 1963 agreement. This, petitioner contends, established an annuity for the benefit of decedent's mother for her life, and was a complete and valid gift, both for state law purposes and for Federal tax purposes. However, since we have already concluded that the agreement of August 27, 1963 did not represent a completed gift for Federal tax purposes, it necessarily follows that no gift tax liability arose from that transaction, and we need not consider it further. We therefore turn to the actions of decedent in 1965. Respondent contends that decedent's transfer to the trust on April 8, 1965 constituted a completed gift of an annuity in the amount of $12,500 per year for the benefit of his mother, limited by the joint lives of decedent and his mother. [10]
*386 Section 2511 subjects to gift tax all transfers" * * * in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible * * *." Section 25.2511-2(b) of the Estate and Gift Tax Regulations provides: As to any property, or part thereof or interest therein, of which the donor has so parted with dominion and control as to leave in him no power to change its disposition, whether for his own benefit or for the benefit of another, the gift is complete. But if upon a transfer of property (whether in trust or otherwise) the donor reserves any power over its disposition, the gift may be wholly incomplete, or may be partially complete and partially incomplete, depending upon all of the facts in the particular case * * *. The cases clearly establish that in determining whether a transfer in trust constitutes a completed gift for Federal tax purposes, the pivotal factor is whether the settlor has abandoned sufficient dominion and control over the property transferred to put it beyond recall. Burnet v. Guggenheim,288 U.S. 280 (1933); Estate of Sanford v. Commissioner,308 U.S. 39 (1939); *387 Smith V. Shaughnessy,318 U.S. 176 (1943); Estate of Holtz v. Commissioner,38 T.C. 37 (1962). In the present case, the April 8, 1965 trust instrument created in decedent's mother the right to receive $12,500 per year, if she survived her husband, for as long as she and decedent lived. These payments were to be made, by reference to the 1963 agreement, [11] from the first proceeds of decedent's inheritance under his grandfather's will, which was part of the trust corpus. The 1965 trust was irrevocable and decedent retained no power in himself to alter the terms of the trust during his lifetime. Thus, decedent effectively relinquished dominion and control over a specific portion of his remainder interest under his grandfather's will by virtue of his transfer to the 1965 trust. We therefore conclude that decedent made a completed gift to his mother of the above-described annuity on April 8, 1965. It remains for us to determine the valuation of the above gift. Two somewhat *388 related issues are presented in this regard. First, we must consider whether the value of the gift, measured by the joint life expectancies of decedent and his mother, should be reduced by the antecedent life estate of decedent's father, Harry, Jr., [12] and whether that life expectancy should be determined by reference to the standard mortality tables in valuing the gift. Second, we must consider whether the annual $3,000 exclusion under section 2503(b) should be disallowed with respect to the gift on the ground that said gift constituted a "future interest in the property." The resolution of both of the above issues depends upon whether the intervening life estate of Harry, Jr. should be given any effect or, conversely, whether said life estate should be disregarded. Section 2512(a) provides: If the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift. The methods and some of *389 the actuarial tables that are to be used in valuing annuities, life estates, terms for years, remainders and reversions transferred on or before December 31, 1970, are set forth in section 25.2512-5 of the Gift Tax Regulations. Generally, these actuarial tables are to be applied if the valuation of a life interest is required for purposes of Federal estate or gift taxes. Estate of Van Horne v. Commissioner,78 T.C. 728 (1982); Estate of Lester v. Commissioner,57 T.C. 503 (1972). Unanticipated events occurring subsequent to the valuation date will not generally be considered for valuation purposes. Estate of Van Horne v. Commissioner,supra;Ithaca Trust Co. v. United States,279 U.S. 151 (1929). However, tables are evidentiary only. They must be disregarded when facts which were known on the valuation date indicate that the use of such tables is improper. Estate of Van Horne v. Commissioner,supra.Hoelzel v. Commissioner,28 T.C. 384 (1957); Estate of Jennings v. Commissioner,10 T.C. 323, 327 (1948); Estate of Denbigh v. Commissioner,7 T.C. 387 (1946). *390 Use of the prescribed mortality tables to compute the value, on April 8, 1965, of the $12,500 annuity for the joint lives of decedent and Freda presents no problem. There is nothing in this record to indicate that there were any known facts with regard to either life which would warrant a departure from the normal method of valuation. In the case of the antecedent life estate of Harry, Jr., however, the situation is different. The 1965 trust instrument was executed only one day prior to the death of Harry, Jr., and his death was known to be imminent on the date of execution. That is, Harry, Jr.'s life estate, in every real sense, had concluded on April 8, 1965, and this fact was known at that time. Under these circumstances, to afford Harry, Jr.'s intervening estate any effect in valuing Freda's gift would require us to ignore the realities which existed on the transfer date. This we refuse to do, and we therefore hold that Harry, Jr.'s "life estate" is to be disregarded in valuing the gift to Freda. [13]
*391 We now turn to consider the second above-mentioned issue; i.e., whether the annual $3,000 exclusion under section 2503(b) should be allowed with respect to the April 8, 1965 gift. Section 2503(b) as it was constituted in 1965 provided in pertinent part: In the case of gifts (other than gifts of future interests in property) made to any person by the donor during the calendar year 1955 and subsequent calendar years, the first $3,000 of such gifts to such person shall not, for purposes of subsection (a), be included in the total amount of gifts made during such year * * *. [emphasis supplied] Thus, we must determine whether the property interest created in Freda by the April 8, 1965 trust constituted a present interest or a future interest. The Supreme Court has stated that the resolution of this issue in a given case turns on whether the interest acquired by the donee was "limited to commence in use, possession or enjoyment at some future date." Ryerson v. United States,312 U.S. 405 (1941); United States v. Pelzer,312 U.S. 399 (1941). However, in Fondren v. Commissioner,324 U.S. 18, 20 (1945), the Court, referring to *392 the above terminology, stated: These terms are not words of art, like "fee" in the law of seizin * * * but connote the right of substantialpresenteconomicbenefit.The question is of time, not when title vests, but when enjoyment begins. Whatever puts the barrier of a substantialperiod between the will of the beneficiary or donee now to enjoy what has been given him and that enjoyment makes the gift one of a future interest * * *. [emphasis supplied] The Court further stated in Fondren that in determining whether the requisite "substantial present economic benefit" is present in any given case "* * * it is necessary to consider the terms of the trust andthecircumstancesinwhichthegiftsweremade" (emphasis added). See 324 U.S. at 20, 21-22. In applying the above principles to the facts of the present case, we are reminded that * * * taxation is an intensely practical process concerned less with legal formalities than with economic realities and that tax consequences flow from the substance rather than the form of a transaction; * * *. [Anderson v. Commissioner,164 F.2d 870, at 873 (7th Cir. 1947); *393 cert denied 334 U.S. 819 (1948)]
See also Helvering v. Clifford,309 U.S. 331 (1940); Helvering v. Horst,311 U.S. 112 (1940); Lucas v. Earl,281 U.S. 111 (1930). Although payments to Freda under the April 8, 1965 trust agreement were not to commence until after the death of Harry, Jr., we have already found that Harry, Jr.'s life estate had, in substance, ended on the date of creation of the trust. It necessarily follows that Freda's right to "substantial economic benefit" under the trust had crystalized on April 8, 1965. As such, and consistent with our holding that Harry, Jr.'s one-day life estate is to be disregarded in valuing the gift to Freda, the economic realities of the present case dictate that her interest under the trust be classified as a "present interest" rather than a "future interest." Cf. Estate of Goldstone v. Commissioner, 78 T.C.     No. 80 (1982) (reviewed by the Court). The annual exclusion under section 2503(b) will therefore be allowed in computing the amount of the taxable gift. To do otherwise would be to exalt form over substance to the point of the ludicrous, a result which *394 we do not believe the law requires. The precise amount of decedent's liability for gift tax will be computed as part of the recomputations to be made herein under Rule 155, pursuant to our holdings above.Such amount, together with interest to the date of decedent's death and additions imposed by respondent, if any, are allowable deductions as claims against the estate. To give effect to the above, as well as other issues on which the parties have agreed, or have agreed to agree, Decision will be entered under Rule 155.
Footnotes
*. This case was tried before Judge Cynthia Holcomb Hall who subsequently resigned from the Court. By order of the Chief Judge, the case was reassigned to Judge Jules G. Korner III.↩
1. Petitioner raised another issue relating to the proper valuation of the Realty and Grossinger's mortgage note receivable.This valuation issue was settled by agreement of the parties and will therefore not be further referred to here.↩
2. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.↩
3. Since it is undisputed that all the parties to the agreement of August 27, 1963 resided in New York and the agreement was executed in New York, it is clear that, where state law is relevant, it is New York law that will apply.↩
4. Although the agreement is couched in terms of a joint obligation of decedent and his sister to pay their mother an annuity of $25,000 per year, both petitioner and respondent have treated it as the separate obligation of decedent and his sister to make annuity payments of $12,500 each. Such interpretation is consistent with subsequent actions of decedent and his sister, as shown by the record herein, and we accept it as being a correct interpretation of the agreement.↩
5. The point was not argued by petitioner, but was treated in respondent's brief. For the sake of completeness, we will consider it here.↩
6. As indicated in our Findings of Fact, petitioner, at trial, properly amended his pleadings to raise the deduction issue, and respondent did not object. This issue is therefore properly before the Court under Rule 41(b), Tax Court Rules of Practice and Procedure.↩
7. Since the parties agree, pursuant to stipulation, that the estate is entitled under Section 2053, to deduct the amount of decedent's unpaid gift tax liability, plus interest accrued thereon to the date of decedent's death, plus any addition with respect thereto, our sole inquiry here involves the proper amount of the allowable deduction. ↩
8. Section 2053(a)(3) provides: (a) General Rule - For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts - * * * (3) for claims against the estate. ↩
9. Although the parties cannot confer jurisdiction on us by consent, Mohawk Glove Corp. v. Commissioner,2 B.T.A. 1247 (1925), we note that respondent concedes, in the stipulation herein, the propriety of our disposing of this issue. We also note that, in the context of respondent's ability to assess a deficiency for gift tax, decedent filed no gift tax return during his lifetime.See p. 13, supra.↩
10. Although respondent's brief opening statement at trial herein made it appear that respondent might have been relying upon the "assignment" of November 3, 1965, as the event giving rise to gift tax liability, it is clear from his briefs that respondent relies on the April 8, 1965 trust agreement as the gift tax-generating event.↩
11. The 1965 gift in trust by decedent incorporated by reference the 1963 agreement, and payments under the 1965 trust were therefore to be made as set out in said agreement.↩
12. The 1963 agreement, which was incorporated by reference into the 1965 trust provided that payments to Freda would commence upon Harry, Jr.'s death, at which time decedent's remainder interest under his grandfather's will would fall in.↩
13. Compare, Estate of Goldstone v. Commissioner,↩ 78 T.C.     No. 80 (1982), (reviewed by this Court), wherein we held that a life estate that had vested for a theoretical instant due to a presumption raised by a state simultaneous death statute, should be disregarded both for purposes of valuing a gift and for purposes of determining whether the subject matter of the gift should be included in the gross estate of the donor under section 2036 (transfers with a retained life estate).