**ESTATE OF Selig Allen GROSSINGER, Deceased, Joseph G. Blum, Executor, Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

**No. 111, Docket 83–4082.**

United States Court of Appeals, Second Circuit.

Argued Oct. 27, 1983.

Decided Dec. 14, 1983.

Maurice H. Greenberger, Hutton & Solomon, New York City, for appellant.

Glenn L. Archer, Jr., Asst. Atty. Gen., Washington, D.C. (Michael L. Paup, Gary R. Allen, Lisa A. Prager, Tax Div., Dept. of Justice, Washington, D.C.), for appellee.

Before LUMBARD, OAKES and KEARSE, Circuit Judges.

OAKES, Circuit Judge:

This is an appeal from a judgment of the Tax Court, Jules G. Korner III, Judge, finding a deficiency as the result of the taxpayer's improper exclusion from the decedent's gross estate of the full fair market value of future payments due to a third party under certain instruments purporting to establish an indebtedness in the form of a gift or a trust. *Estate of Grossinger v. Commissioner,* T.C. Memo 1982–393 (July 14, 1982).

The facts were stipulated. The decedent, Selig A. Grossinger ("Sandy" hereafter) died in 1972. His grandfather, Selig Grossinger, originally owned fifty percent of the stock in two corporations which respectively operated the well-known resort hotel bearing his name in Sullivan County, New York, and owned the real property on which the hotel is located (the hotel and realty corporations). He died in 1931, leaving this stock in trust, with the income to go to his widow during her life. Upon her death, Selig's will provided that twenty-five percent of the stock would go outright to his daughter, Lottie Grau, and the remaining seventy-five percent would be held in trust, with the income from it to go to his son, Harry, Jr., during his life. The trust was to terminate at Harry, Jr.'s death, and the principal distributed in equal shares to the then living issue of Harry, Jr. Harry, Jr. was married to Freda, and they had two children after the death of grandfather Selig, including Sandy, the decedent here, and Mary Ann Klein. On the death of Selig's widow in

1952, twenty-five percent of the trust corpus, consisting of shares in the hotel and realty corporations, was distributed outright to Lottie Grau; the remaining shares were held in trust for the benefit of Harry, Jr., as income beneficiary, until his death in 1965.

Before Lottie Grau died in 1962, she had brought a derivative suit as a shareholder in the hotel and realty corporations against the holders of the other fifty percent of the stock. The trustee under Selig Grossinger's will joined in the action as a shareholder plaintiff. The case was settled. Under the agreement, the shareholder plaintiffs' stock was purchased for about $2,000,000. The trustee under Selig Grossinger's will received part of the cash payment of $200,000 and a mortgage note in the sum of $1,345,-000 payable with interest over a period of twenty years. Concomitant to and contemporaneous with the settlement and stock sale in 1963, Harry, Jr. and his two children, Sandy Grossinger and Mary Ann Klein, executed an agreement, whereby all three consented to the sale of stock by the trustee under Selig Grossinger's will. The parties

also stipulated that Sandy and Mary Ann would provide $25,000 a year from the proceeds of their inheritance under the will of Selig Grossinger to their mother, Freda, for the rest of her life. The specific language of this agreement of August 27, 1963, is set out in the margin.[1] It was stipulated below that neither Sandy nor any other person at his request received any money or money's worth in goods for entering into this agreement.[2]

Harry, Jr. died on April 9, 1965. On the day before Harry's death, in anticipation thereof, Sandy entered into a trust agreement whereby he transferred to three trustees the sum of $1,000, together with all of his interest and rights to all property to which he might be entitled as remainderman under the will of his grandfather. The pertinent language of this April 8, 1965, trust agreement is set out in the margin.[3]

On November 3, 1965, Sandy executed an assignment authorizing his trustees under the trust of April 8, 1965, to receive all the property to which he was entitled as remainderman under his grandfather's will.[4]

1. 2. It is hereby mutually agreed that in the event of the death of Harry, Jr. prior to the death of Flo [Freda], Mary Ann and Sandy shall pay to Flo from the proceeds of their inheritance under the will of Selig Grossinger, deceased, the sum of Twenty-Five Thousand ($25,000.) Dollars per year for her lifetime. Such payment of Twenty-Five Thousand ($25,000.) Dollars a year shall be paid from the first proceeds of any amounts received in each year by Mary Ann and Sandy from distributions received from the Estate of Selig Grossinger, Deceased. Mary Ann and Sandy may in their discretion at any time purchase an annuity contract to provide for the payment to Flo of the said sum of Twenty-Five Thousand ($25,000.) Dollars.

2. There is no contention that the consent of Harry, Jr., Sandy, and Mary Ann to the Trustee's sale of the trust's hotel and realty corporation stock was consideration in money or money's worth.

3. 1. The Settlor does hereby transfer and deliver to the Trustees, in trust, the sum of One Thousand ($1,000) Dollars, the receipt of which is hereby acknowledged by the Trustees, and does hereby assign, transfer and set over unto the Trustees all of the right, title and interest of the Settlor in and to all prop-

erty, interest and rights to which the Settlor now is or may at any time hereafter be entitled, absolutely and contingently, under the Last Will and Testament of Selig Grossinger, Deceased, grandfather of the Settlor, . . . .

3. . . . c. This trust shall terminate upon the death of the Settlor. Upon such termination, the principal of the trust and all accrued income shall be disposed of and distributed as part of the estate of the Settlor.

4. The Settlor hereby directs the Trustees to recognize (a) the indebtedness and obligation of the Settlor to Freda Grossinger, mother of the Settlor, pursuant to a certain agreement made on August 27, 1963 between Harry Grossinger, Freda Grossinger, Mary Ann Klein and the Settlor . . . . The Trustees are hereby authorized and directed to discharge the indebtedness and obligations of the Settlor as aforesaid from time to time from the assets of the trust established under this agreement.

4. The assignment provided in pertinent part:

Now, therefore, in consideration of One Dollar ($1.00), lawful money of the United States and other good and valuable consideration received from the Assignees, receipt whereof is hereby acknowledged, the Assignor does hereby assign, transfer and set over

On November 10, 1965, the trustee of the terminated trust under Selig Grossinger's will executed an assignment of the interests in the mortgage note payable by the hotel and realty corporations to Mary Ann Klein and to the trustees of the trust created by Sandy on April 8, 1965. Pursuant to an authorization in December, 1965, executed by Mary Ann Klein individually and by Sandy Grossinger as settlor of the April 8, 1965, trust, as well as by the trustees thereof, payments on the mortgage were made thereafter to a law firm which paid Freda Grossinger $6,250 per quarter or $25,000 a year. The remainder of the payments were divided equally between Mary Ann Klein and the trustees under Sandy's trust agreement of April 8, 1965.

After the death of Sandy Grossinger on September 30, 1972, the amounts payable to the trustees were made payable to Sandy's executors. The pertinent portions of his will are set forth in the margin.[5] The parties have stipulated the fair market value of the notes due from the hotel and realty corporations as of the date of Sandy Grossinger's death in 1972, as well as the fair market value of an annuity payable to Freda Grossinger of $12,500 per year as of August 27, 1963, November 3, 1965, and September 30, 1972.

On audit of the estate's tax liability, the Commissioner determined that the full value of the mortgage note receivable from the hotel and realty corporations was includable in Sandy Grossinger's gross estate, without deduction for any amounts payable to Freda. The estate sought redetermination of the assessed deficiency. It argued that the agreement of August 27, 1963, effected a completed gift of an annuity interest in the decedent's share of the proceeds of the testamentary trust established by Selig's will to Freda for her lifetime, and that, therefore, the value of the mortgage note should be reduced by the actuarial value of the asserted annuity. Alternatively, the estate contended that a completed gift was made to Freda by the April 8, 1965, trust agreement.

The Tax Court concluded that under New York law the 1963 agreement did not result in a completed transfer to Freda of a beneficial interest in the subject property, but simply represented a promise to make a gift in the future. It then held that while the April 8, 1965, trust constituted a completed gift of such an annuity interest, the annuity interest was terminable under the terms of the trust agreement on the death of the decedent. As a result, the full value of the mortgage note is still includable in Sandy Grossinger's gross estate.

## DISCUSSION

█ We agree with the Tax Court. There is no doubt that the decedent's share of the mortgage note receivable is includable in his estate under either Internal Revenue Code § 2033 (property in which decedent had an interest) or § 2041 (power of appointment). 26 U.S.C. §§ 2033, 2041 (1976).

---

unto the Assignees all of the right, title and interest of the Assignor in and to all property, interests and rights to which the Assignor now is 'or may at any time hereafter be entitled absolutely or contingently under the said Last Will and Testament of Selig Grossinger, deceased, including without limitation his entitlement to any part of the principal and income of the trusts created under Articles Second and Fourth of said Last Will and Testament of Selig Grossinger, deceased, of which Jacob Grumet is Trustee.

. . . .

This assignment is made for the purpose of confirming the assignment made by the Assignor to the Assignees of the subject matter of this assignment by the trust agreement made on the 8th day of April, 1965, herein-

above described, and the Assignor represents that, except for such prior assignment, he has not heretofore at any time assigned, transferred or otherwise encumbered his right, title and interest in and to any of the aforesaid property, interests and rights.

5. SEVENTH: I hereby direct my Executors and Trustees to recognize my indebtedness and obligation to my mother, Freda Grossinger, pursuant to a certain agreement made on August 27, 1963 between my father, Harry Grossinger, my mother, Freda Grossinger, my sister, Mary Ann Klein and myself and I direct my Executors and Trustees to discharge any obligation or indebtedness owing by me under said agreement from the assets of my estate or of any trust established hereunder.

The only question concerns the exclusion of a portion thereof for payments to Freda. The intra-family agreement of August 27, 1963, did not result in a completed gift or constitute a valid declaration of trust. And while the trust of April 8, 1965, did effect a completed gift, it was only of an annuity for the shorter of Sandy's and Freda's lives.

■ As to the intra-family agreement of August 27, 1963, it was not a completed gift within Section 2511 of the I.R.C.[6] and its supporting regulations, 26 C.F.R. § 25.-2511–2(b).[7] While a donor may effect a completed, present gift of a future interest, N.Y. Est. Powers & Trusts Law § 6–5.1 (McKinney 1967), including a contingent one, *Clowe v. Seavey,* 208 N.Y. 496, 102 N.E. 521 (1913), the agreement of August 27, 1963, did not constitute an "irrevocable assignment" within the gift tax regulations,[8] so as to result in a completed gift. At most it was a promise, unenforceable by anyone, to make a gift in the future. *Sussman v. Sussman,* 61 A.D.2d 838, 839, 402 N.Y.S.2d 421, 422–23 (1978), *aff'd,* 47 N.Y.2d 849, 392 N.E.2d 881, 418 N.Y.S.2d 768 (1979); Restatement (Second) of Trusts § 26 and comment *m,* § 30 (1959). *See also Farmers' Loan & Trust Co. v. Winthrop,* 238 N.Y. 477, 485, 144 N.E. 686, 687 (1924).

■ Nor was the August 27, 1963, agreement a declaration of trust. While it is true that no particular form of words need be used to establish a trust, there must be either an explicit declaration or clear cir-cumstances indicating that a trust was intended to be created. *In re Estate of Fontanella,* 33 A.D.2d 29, 30–31, 304 N.Y.S.2d 829, 831 (1969). What was missing here was "the actual delivery of the fund or other property to the trustee with the intention of passing legal title thereto to him as trustee." *Id.* In this case, such delivery would have been accomplished by an assignment of the future payments due under Selig Grossinger's will or some form of divestment of Sandy's control over those payments. *Id.,* 33 A.D.2d at 31–32, 304 N.Y.S.2d at 831–32; *see also Sussman v. Sussman,* 61 A.D.2d at 838, 402 N.Y.S.2d at 422–23.

The appellant relies upon *Estate of Holt v. Commissioner,* 14 B.T.A. 564 (1928), to support its view that the August 27, 1963, agreement created a valid trust under New York law. As the Tax Court noted, however, *Holt* is clearly distinguishable from this case. In *Holt,* the decedent/settlor set aside certain bonds for his sister and marked them as such. In addition, he signed a memorandum stating that the designated bonds were hers, and repeatedly wrote her to that effect. Although his sister declined to take custody of the bonds, the settlor nevertheless remitted to her the income from them and made an annual accounting to her. There are no similar facts here from which we can infer that the decedent held specific property in trust for his mother.

---

**6.** Section 2511 provides in part:

(a) Scope.—Subject to the limitations contained in this chapter, the tax imposed by section 2501 shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible; but in the case of a nonresident not a citizen of the United States, shall apply to a transfer only if the property is situated within the United States.

26 U.S.C. § 2511(a) (1976).

**7.** 26 C.F.R. § 25.2511–2(b) (1983) provides in part:

(b) As to any property, or part thereof or interest therein, of which the donor has so parted with dominion and control as to leave in him no power to change its disposition, whether for his own benefit or for the benefit of another, the gift is complete. But if upon a transfer of property (whether in trust or otherwise) the donor reserves any power over its disposition, the gift may be wholly incomplete, or may be partially complete and partially incomplete, depending upon all the facts in the particular case. . . .

**8.** If A is possessed of a vested remainder interest in property, subject to being divested only in the event he should fail to survive one or more individuals or the happening of some other event, an irrevocable assignment of all or any part of his interest would result in a transfer includible for Federal gift tax purposes. See especially paragraph (e) of § 25.-2512–5 or paragraph (e) of § 25.2512–9, whichever is applicable, for the valuation of an interest of this type.

26 C.F.R. § 25.2511–1(h)(6) (1983).

The conclusion that no valid transfer was effected by the August 27, 1963, agreement is confirmed by subsequent events. The April 8, 1965, trust agreement directed decedent's trustees to recognize his "indebtedness" to his mother arising under the August 27, 1963, agreement and to discharge that indebtedness from the assets of the trust. It was followed by the November 3, 1965, assignment "confirming" the assignment made by the April 8, 1965, trust agreement, and representing that Sandy, "except for such prior assignment," had "not heretofore at any time assigned, transferred or otherwise encumbered" his rights under his grandfather's will. These two instruments, taken together, are inconsistent with the concept of a completed gift or trust established in 1963.

The two 1965 instruments did establish, however, the theretofore missing assignment necessary to effectuate a transfer in trust (and completed gift) as of the effective date of the assignment.[9] But as the Tax Court held, this assignment fails to result in an exclusion of Freda's interest in remaining payments from the hotel and realty corporation after Sandy's death in 1972, since the April 8, 1965, trust terminated by its own terms on the death of the settlor. The trust expressly provided that all trust assets were then to be "disposed of and distributed as part of the estate of the settlor." Accordingly, although Sandy's will carried out the intent of the 1963 agreement by making a bequest of the proportionate rights to receive future payments from the hotel and realty corporation to his mother, the will, not the 1963 agreement, was the basis for the continuing payments to Freda after his death.

The parties stipulated that deductions are allowable from the gross estate for interest accruing on the deficiency and for litigation expenses incurred by the estate. Because those sums are not fixed, the case is remanded for appropriate adjustments. The judgment of the Tax Court is otherwise affirmed, without costs.

Judgment affirmed without costs; cause remanded for further proceedings in accordance with this opinion.

9. This is so whether that date was April 8, 1965 or November 3, 1965.